UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.  1:16-CV-20027 MGC

FLOR ANDREA RODRIGUEZ ASALDE, et al.

      Plaintiff,

vs.

FIRST CLASS PARKING SYSTEMS LLC
a/k/a 1ST CLASS VALET SERVICE,
SEBASTIAN LOPEZ,  JORGE ZULUAGA,

      Defendants.

_____/

## DEFENDANTS' MOTION FOR SUMMARY FINAL JUDGMENT

Pursuant to Fed.R.Civ.P. 56 and Local Rules 7.1 and 56.1 of the Southern District of Florida, Defendants, FIRST CLASS PARKING SYSTEMS LLC, SEBASTIAN LOPEZ and JORGE ZULUAGA (collectively, "Defendants") move for summary final judgment on the grounds there are no genuine issues as to any material fact, and, as more fully set forth in the following memorandum of law, Defendants are entitled to summary judgment as a matter of law.

## OVERVIEW

The duties of the three (3) Plaintiffs as a valet parker/runner, customer service person and a "key person," did not involve interstate commerce.[1]  Plaintiffs' employer, Defendant, FIRST CLASS PARKING SYSTEMS, LLC, similarly had no involvement in interstate commerce. Summary Judgment should be granted in favor of Defendants on this basis alone.  Furthermore, each of the Plaintiffs have failed to meet their burden to prove that they performed work for which they were not properly compensated by failing to produce any evidence to show the date,

_____

[1] A "Key Person" is the employee who is responsible for holding the keys to the cars which have been valet parked.

the amount and extent of the work. This is yet another basis to grant Defendants summary judgment. Defendants, JORGE ZULUGA and SEBASTIAN LOPEZ did not have the requisite degree of control over Plaintiffs' work to qualify as "employers" under the FLSA.

Moreover, it is especially significant that this case is extremely similar to another case before the Court that was recently decided in Defendants' favor on summary judgment involving the same subject matter, the same claims, the same defendants, and the same attorneys for Plaintiff and Defendants: *Rodriguez v. Gold Star, Inc.*, *et al.*, 15-cv-20902-AOR (S.D.Fla. March 2, 2016), *rehearing den.*, March 31, 2016. Just as summary judgment was granted in Defendants' favor in the *Rodriguez* case, this Court should similarly grant Defendants summary judgment here.

For these reasons, Defendants respectfully request that the Court grant the instant Motion and enter summary final judgment against Plaintiff.

## RELEVANT PROCEDURAL HISTORY

1.     On January 5, 2016, Plaintiffs filed their Complaint [D.E. #1].

2.     Plaintiffs allege that they are only due overtime (half time) wages – and not regular wages – for the hours they claimed they worked.

3.     On January 20, 2016, Defendants filed their Answer [D.E. #18].

4.     Plaintiff and Defendants have exchanged written discovery.

5.     Defendants deposed Plaintiffs on May 10, 2016.

6.     Plaintiffs deposed the individual Defendants and the Corporate Representative on April 27, 2016.

7.     This matter is currently set for trial on the two-week calendar commencing October 31, 2016 [D.E. #13].

## ARGUMENT AND MEMORANDUM OF LAW

I. **Standard of Review**

The Court, in reviewing a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil Procedure 56(c).  The moving party bears the burden of meeting this exacting standard.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).  That is, "[t]he moving party bears 'the initial responsibility of informing the ... [C]ourt of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *U.S. v. Four Parcels of Real Prop.,* 941 F.2d 1428, 1437 (11th Cir. 1991), quoting *Celotex,* 477 U.S. at 323.

Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "**specific facts** showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(emphasis added); *see also Big Apple BMW, Inc. v. BMW of N. Am. Inc.*, 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion.  *Tziatzios v. United States*, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996).  If the court determines there are no genuine issues of material fact, then summary judgment will be granted.  *See Celotex*, 477 U.S. at 322.

II. **No Individual Coverage Because No Interstate Commerce**

It is undisputed that there was no transfer of goods or property from Plaintiffs to the persons who brought their cars to be parked.  Parking a car is purely a service.  It is also

undisputed that Plaintiffs were not "engaged in ... the production of goods for commerce".[2] Therefore, the Court must determine whether Plaintiffs were engaged in commerce".

As set forth above, this case is extremely similar to another case that was recently decided in Defendants' favor on summary judgment involving the same subject matter, the same claims, the same defendants, and the same attorneys for Plaintiff and Defendants: *Rodriguez v. Gold Star, Inc., et al.*, 15-cv-20902-AOR (S.D.Fla. March 2, 2016), *rehearing den.*, March 31, 2016. (A copy of the *Rodriguez* Court's Order on Cross-Motions for Summary Judgment has been filed in this action as D.E. #29-1.) *Rodriguez* is also instructive as to the proper analysis for the Court to engage in with respect to individual (and enterprise coverage) under the FLSA.

As the *Rodriguez* Court explained:

> "[F]or an employee to be 'engaged in commerce' under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Thome v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006). **The test for determining whether an employee is engaged in commerce is "whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity."** *Mitchell v. C. W. Vollmer & Co.*, 349 U.S. 427, 429 (1955).

D.E. #29-1, pp.4-5 (emphasis added).

---

[2] As Plaintiffs were involved solely in the provision of a service (parking cars), and did not produce any goods, let alone goods for commerce, they cannot be said to have "engaged in ... the production of goods for commerce". *See Rivera v. Deer Run Realty Management, Inc.*, 2015 WL 4878681 at *3 (M.D.Fla  Aug. 14, 2015), citing *Scott v. K.W. Max Investments, Inc.*, 2007 WL 423080 (M.D.Fla., Feb. 6, 2007).

Just as in *Rodriguez*, "[t]here is no evidence that the parking of cars at these venues was `directly and vitally related to the functioning of an instrumentality or facility of interstate commerce.'" D.E. #29-1, p.8, citing *Mitchell v. C. W. Vollmer & Co.*, 349 U.S. 427, 429 (1955).

*Jimenez v. Southern Parking, Inc.*, 2008 WL 4279618 (S.D. Fla. Sept. 16, 2008), a case with similar facts, is also instructive as to the proper analysis for the Court to engage in with respect to individual (and enterprise coverage) under the FLSA.  In *Jimenez*, the Court found there was no individual coverage under the FLSA for an employee who washed cars at a condominium where some of the products used to perform his job had once moved in interstate commerce.  As the *Jimenez* Court explained:

> The FLSA's overtime provisions apply under two circumstances: (1) where an employee is engaged in commerce or the production of goods for commerce ("individual coverage") or (2) where an employee works for an "enterprise" engaged in commerce or in the production of goods for commerce ("enterprise coverage"). **The burden of proof lies on employees to establish that they were engaged in interstate commerce**, or in the production of goods, and that such production was for interstate commerce.
>
> *        *        *
>
> Individual coverage applies where the plaintiff is "engaged in commerce or in the production of goods for commerce." **"[F]or an employee to be "engaged in commerce" under the FLSA, he must be directly participating in the <u>actual movement of persons or things in interstate commerce</u> by (i) working for an instrumentality of interstate commerce, *e.g.,* transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.,* regular and recurrent use of interstate telephone, telegraph, mails, or travel.** It is undisputed that the plaintiff was not engaged in the production of goods for commerce while [parking cars]. The issue is whether the plaintiff's was "engaged in commerce," as defined in 29 U.S.C. § 207(a)(1).
>
> **When determining individual coverage, the character of the employee's activities is determinative, not the nature of the employer's business. The test, therefore, is "whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity."** The application of this test to a

5

FLSA claim is essentially a "line drawing exercise."

*Id*. at *6-7 (ellipses and quotes in original)(citations omitted)(emphasis added).

In their Complaint, Plaintiffs allege generally and without any specific facts whatsoever:

Both the Defendant's business and the Plaintiffs' work for the Defendants affected interstate commerce for the relevant time period. Plaintiffs' work for the Defendants affected interstate commerce for the relevant time period **because the materials and goods that Plaintiff used on a constant and/or continual basis and/or that were supplied to him [*sic*] by the Defendants to use on the job moved through interstate commerce prior to and/or subsequent to Plaintiffs' use of the same. The Plaintiffs' work for the Defendants was actually in and/or so closely related to the movement of commerce while he [*sic*] worked for the Defendants that the Fair Labor Standards Act applies to Plaintiffs' work for the Defendants.**

[D.E. #1, ¶14](emphasis added).

However, as the *Jimenez* Court explained:

As the Eleventh Circuit has further explained in [*Thorne*]: "For an employee to be 'engaged in commerce' under the FLSA, he must be **directly participating in the actual movement or persons or things in interstate commerce by** (i) working for an instrumentality of interstate commerce, *e.g.* transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.* regular and recurrent use of interstate telephone, telegraph, mails or travel." *Id.* (citing 29 C.F.R. § 776.23(d)(2) (2005); 29 C.F.R. § 776.24 (2005); and referring to *McLeod*, 319 U.S. at 493-98, which held that plaintiff's activities were purely local and plaintiff was not "engaged in commerce" when plaintiff merely cooked and cleaned for railroad workers).

The undersigned is bound by the Eleventh Circuit's decision in *Thorne v. All Restoration Services, Inc.,* 448 F.3d 1264 (11th Cir. 2006). In *Thorne,* the court held that **"the mere purchase of goods that previously moved in interstate commerce for intrastate use" is insufficient to implicate interstate commerce. The Court reasoned that the plaintiff, who performed mold and water damage restoration work for residential and commercial properties, was not covered by the FLSA just because in the course of his work he purchased tools that may have crossed state lines at some previous time.** *Id.; see also Guzman,* 551 F.Supp. 2d at 1371 (interpreting *Thorne* as saying that the ultimate consumers of

goods that have traveled in interstate commerce are not covered by the FLSA).

The Court finds that as a matter of law the plaintiff was not "engaged in interstate commerce" by [parking] cars …. The plaintiff has not countered the evidence proffered by the defendants that [defendant] purchased all the materials for the car wash in Florida. **Evidence that the plaintiff has used supplies and equipment that have once moved in interstate commerce is insufficient to qualify him for coverage. Ultimate consumers of products are not "engaged in commerce" just because they purchase products that have moved in interstate commerce.**

There is no evidence that the plaintiff regularly used instrumentalities of interstate commerce like the telephone, mail, fax, internet, or transportation while washing cars at the condominium. … No facts exist to counter the conclusion that the plaintiff's activities [parking] cars was purely local in nature. Thus, individual coverage does not apply, as a matter of law, in the instant case.

*Jimenez*, 2008 WL 4279618 at *8 (emphasis added).[3]

As the *Rodriguez* Court stated in summarizing Plaintiffs' argument:

**Essentially, Rodriguez is asking this Court to issue a ruling, as a matter of law, that any employee involved with parking cars is necessarily engaged in commerce. The test, however, is not as loose as Rodriguez proposes.** To carry the burden of showing that he, as a valet runner, was engaged in commerce, Rodriguez would need to show that his "work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Mitchell*, 349 U.S. at 429. Rodriguez has adduced no facts that would support such a finding.

D.E. #29-1, p.8 (emphasis added).  Similarly, in the instant action, Plaintiffs have not and cannot

adduce any facts that their "work is so directly and vitally related to the functioning of an

---

[3] Significantly, Defendants are not relying on the "coming to rest" doctrine.  Instead, Defendants are relying upon the "ultimate consumer exception" to the FLSA as explained in *Thorne*.  In anticipation that Plaintiff will argue that *Polycarpe v. E & S Landscaping Service, Inc.*, 616 F.3d 1217 (11th Cir. 2010), which involves completely different facts, somehow abrogated *Thorne*, Defendants respectfully submit that if the Eleventh Circuit Court of Appeals wanted to abrogate *Thorne*, it would have explicitly done so in *Polycarpe*.

instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity.  *Id*.  The reason is simple: Plaintiffs provided a service (parking cars) that is purely local.

Plaintiff, JOHN CONDE's ("Conde") job description was valet/runner who had worked with Juan Rodriguez (plaintiff in the *Rodriguez* case).   *See* copy of transcript of Conde's deposition filed as D.E. #29-2, at p.16, lns.19-21.  He testified as follows with regard to his duties:

> Q.   And what was Juan Rodriguez's job title?
> A.   Just to drive the car and bring it down to the parking. Just to the
>       valet service, to drive the car, put it in the parking, and go back to the
> Q.   Did you do the same thing?
> A.   Yes, that's correct.
> Q.   Did you have different responsibilities than Juan Rodriguez?
> A.   No, that was it, just that: park the car and go back to the podium again.

*Id*. at p.16, ln.22-p.17, ln.7.

> Q.   Was it a lot of work like that when you worked at First Class Parking Systems?
> A.   No, because at First Class, in Skyline, you get the car, you receive the car there
>       and then you just bring it down to the parking and the steps to go up are right
>       there; so it's all practically right there, so ...

*Id*. at p.39, lns.14-20.

Plaintiff, JAVIER ANTONIO CABRERA SAVINOVICH's ("Savinovich") job description was valet/runner.  *See* copy of transcript of Savinovich's deposition filed as D.E. #29-3, at p.10, lns.8-10.  He testified as follows regarding his duties:

> Q.   All right. So the car pulls up, you're next in line, I guess, or whatever.
>       What do you do? Explain it to me.
> A.   Well, basically, like I said, all the people are -- 80 percent of the duties
>       are handling the people that live there already; so we knew who they
>       were when they pulled up.
> Q.   Okay.
> A.   Greet them, take their vehicle and go and park it.
> Q.   And then, when they come downstairs, what do you do then?

8

LAW OFFICE OF LOWELL J. KUVIN
17 EAST FLAGLER STREET · SUITE 223 · MIAMI, FLORIDA 33131 · TEL.: 305.358.6800 · FAX: 305.358.6808

> A.      Then we go and grab the vehicle for them. Sometimes they will call us on the phone or call the front desk and say, "Hey, we're coming down from Apartment 14B. Can we please get our vehicle?" And my duties were to go get it and bring it up to the ramp for them.
>
> Q.      And just so I get this straight, your job responsibilities while working for First Class Parking Systems were to park cars?
>
> A.      That's correct.

*Id*. at p.44, lns.13-16.

Plaintiff, FLOR ANDREA RODRIGUEZ ASALDE's  ("Asalde") job descriptions were customer service person, then key person and sometimes valet/runner.  She testified that customer service person meant she helped people get their cars from the valet by taking their valet ticket and asking to have their car brought.  *See* copy of transcript of Asalde's deposition filed as D.E. #29-4, at p.14, lns. 17-22.  As a key person, she was in charge of the keys to the cars and writing down the information about the cars. *Id*. at p.14, lns. 12-16.  As a runner, she parked cars sometimes, but "very few" cars. *Id*. at p.18, lns.24-25; p.19, lns.1-2.  She testified as follows regarding her duties as a valet/runner:

> Q.      And explain to me what it is when you park cars.
>
> A.      It's just park the car and put the ticket, put the model number, the color and my name. That's it.
>
> Q.      And then, what do you do?
>
> A.      I had to take it to the person in charge of the keys.
>
> Q.      And then, what do you do?
>
> A.      And then, go back to the entrance and wait for the next car to come.
>
> Q.      And that's all you did?
>
> A.      For that one, for parking cars, yes.

*Id*. at p.23, lns. 12-24.  Notably, Asalde is the sister of the plaintiff in the *Rodriguez* case. *Id*. at p.16, lns.15-16.  Significantly, Asalde admitted that when she worked as a valet/runner, she did the same thing her brother (Juan Rodriguez) did when he parked cars.  *Id*. at p.23, lns.9-11.  The *Rodriguez* Court granted Defendants summary judgment based, in part, on the description of the plaintiff's activities as a valet/runner.  D.E. #29-1, p.6.

9

In *Rodriguez*, the Court cited the following deposition testimony from the plaintiff regarding his duties as a valet/runner:

Q.    What was your job description?
A.    My position?
Q.    Yes, please.
A.    Runner.
Q.    What does that mean?
A.    I'd get the cars and park them.
Q.    What else were your responsibilities?
A.    Nothing more.
Q.    And tell me what runner and parking cars entails? What happens? Take me through a scenario.
A.    The runner has to get the car, take it to the parking area, park it, leave the keys with the girl and continue doing that constantly.
Q.    What other responsibilities?
A.    No, none. Only that.

D.E. #29-1, p.6. Accordingly, just as the plaintiff in *Rodriguez*, the duties of the Plaintiffs in the instant action did not involve interstate commerce, and therefore there is no coverage under the FLSA.[4]

Further, the valet parking tickets that Plaintiffs used during their work had been purchased within Florida, and the shirts provided to Plaintiffs to wear while they worked were also purchased within Florida. [D.E. #29-6, ¶¶10-11].[5]

As in *Jimenez*, Plaintiffs' work "did not sufficiently affect commerce because the plaintiff [parked] vehicles using equipment purchased wholly within Florida and that the plaintiff did not drive the vehicles he [parked] except … within the parking [lot]." *Jimenez*, 2008 WL

---

[4] Notably, Plaintiffs' duties in the instant action are wholly distinct from gas station employees who sell goods, *e.g.*, gasoline, to facilitate interstate commerce. Here, Plaintiffs did not sell anything that facilitated interstate commerce. They simply parked cars in parking lots and/or assisted the customers to retrieve their cars. The record is devoid of any evidence that the cars that Plaintiffs parked affected or were involved in interstate commerce.
[5] The facts recited throughout are presented for purposes of summary judgment only. Defendants do not intend to admit any facts not already admitted in the pleadings.

4279618 at *8.  *See also Rodriguez* [D.E. #29-1].  Accordingly, there is no individual coverage

for Plaintiffs under the FLSA.

Moreover, the Department of Labor, Field Operations Handbook, April 22, 1994, Section

11b00(e) instructs:

> However, **individual coverage shall not be asserted for bank employees who operate an adjacent parking lot** for the convenience of bank customers.  They **cannot be said to be either engaged in activities so closely related to the movement of the interstate commerce, nor are they engaged in processes or operations so closely related and directly essential to the production of goods for interstate commerce** by other employees of the bank.

(emphasis added).[6]  "Although not entitled to *Chevron* deference, the Department of Labor's

Field Operations Handbook has been held to be persuasive and entitled to some weight in

judicial interpretations of the FLSA."  *Lopez v. Pereyra, M.D., P.A.,* 2010 WL 335638, *5, n.4

(S.D.Fla. Jan. 29, 2010), citing *Martin v. Occupational Safety and Health Review Comm'n,* 499

U.S. 144, 157 (1991); *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1275 (11th Cir.

2008).  Just as in the bank valet example provided by the Department of Labor in its Field

Operations Handbook, there is no individual coverage for Plaintiffs under the FLSA.

To the extent Plaintiffs claim that their parking of cars which had previously traveled in

interstate commerce qualifies them as an employee "engaged in commerce," such argument has

been squarely rejected by the Eleventh Circuit in *Thorne v. All Restoration Services, Inc.,* 448

F.3d 1264 (11th Cir. 2006) due to the "ultimate consumer exception":

> Moreover, the fact that some of the tools he purchased may have crossed state lines at a previous time does not in itself implicate interstate commerce. When goods reach the customer for whom they were intended, the interstate journey ends and employees engaged in any further

---

[6] Analogous to this example from the Department of Labor, parking a car with the valet service was purely voluntary; everyone had the option to park somewhere else or simply walk.

*intra*state movement of the goods are not covered under the Act. *McLeod,* 319 U.S. at 493, 63 S.Ct. 1248. **Courts distinguish between merchants who bring commerce across state lines for sale and the ultimate consumer, who merely purchases goods that previously moved in interstate commerce for intrastate use.** Therefore, a customer who purchases an item from Home Depot is not engaged in commerce even if Home Depot previously purchased it from out-of-state wholesalers.

*Id*. at 1267 (italics in original)(emphasis added).  Such argument was also expressly rejected by

the *Rodriguez* Court:

While Zuluaga testified in his deposition that the kinds of cars parked in Defendants' valet parking business included Mercedes, Mazdas, Nissans, Hondas, Toyotas, and BMWs, and Rodriguez averred in his affidavit that he regularly parked cars with license plates from states other than Florida, **the activity of parking these cars at the Skyline and the Convention Center was an isolated local activity rather than a part of interstate commerce. There is no evidence that the parking of cars at these venues was "directly and vitally related to the functioning of an instrumentality or facility of interstate commerce." Mitchell, 349 U.S. at 429. And the fact that the drivers of the cars that were being parked were attending events at the Convention Center does not change this result. It was the cars, not their drivers, that were being parked.**

D.E. 29-1, pp.8-9 (emphasis added).  *See also Li v. Li Qin Zhao*, 35 F.Supp.3d 300, 308-9

(E.D.N.Y. 2014)(no individual coverage under FLSA for delivery driver who used, *inter alia*, an

"out of state" car to make deliveries for a local restaurant); *Mendoza v. Detail Solutions, LLC*,

911 F.Supp.2d 433 (N.D. Tex. 2012)(no individual coverage for employee who washed cars

manufactured out of state); *Jacobs v. Dolanlil, Inc.*, 2010 WL 1730807 at *4 (M.D.Fla. April 12,

2010)("By washing cars from out-of-state, Plaintiff is not participating in the actual movement of

persons or things in interstate commerce. Accordingly, Plaintiff has not made the requisite

threshold showing that he directly participated in the actual movement of persons or things in

interstate commerce."); *Jimenez*. 2008 WL 4279618 at *8 ("**Ultimate consumers of products are

not `engaged in commerce' just because they purchase products that have moved in interstate**

commerce.").

For the reasons stated above, as a matter of law, there is no individual coverage for Plaintiffs under the FLSA.

### III.    No Enterprise Coverage Because No Interstate Commerce

As the Eleventh Circuit instructed in *Scott v. K.W. Max Investments, Inc.*, 256 Fed.Appx. 244 (11th Cir. 2007):

> An employee may show his employer is subject to the FLSA by way of enterprise coverage if he demonstrates that the employer is an enterprise that (1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and has an (2) "annual gross volume of sales made or business done [of] not less than $500,000."   29 U.S.C. § 203(s)(1)(A).

*Id*. at 247.  It is undisputed that First Class was not "engaged in … the production of goods for commerce" as it provided only valet parking services and produced no goods whatsoever. Therefore, to determine whether enterprise coverage exists, the Court must determine whether First Class "has employees engaged in commerce" or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person".  *Id*.

First Class did not engage in interstate commerce or in the production of goods for interstate commerce because the business is a valet company which provides only intrastate services to its customers.  [D.E. 29-6, ¶7].  Just as Plaintiffs do not qualify for individual coverage because their work "did not sufficiently affect commerce because the plaintiff [parked] vehicles using equipment purchased wholly within Florida and that the plaintiff did not drive the vehicles he [parked] except … within the parking [lot]," *Jimenez*, 2008 WL 4279618 at *8, similarly, First Class' other employees were not engaged in commerce and did not have

"employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person".  Accordingly, Plaintiffs cannot establish enterprise coverage as to First Class.

In the event Plaintiff argues that First Class used products in its business that had previously traveled in interstate commerce, the record evidence shows that First Class uses valet tickets that were purchased within Florida, and provided shirts to its employees that were also purchased within Florida [D.E. #29-6, ¶¶10-11].   Nevertheless, regardless of where these products were produced, First Class was the ultimate consumer of the products.  **"Ultimate consumers of products are not `engaged in commerce' just because they purchase products that have moved in interstate commerce."** *Jimenez*, 2008 WL 4279618 at *8 (emphasis added).  *See also Zarate v. Jamie Underground, Inc.*, 629 F.Supp.2d 1328, 1332 (S.D.Fla 2009)("Even some out-of-state purchases, such as a local business's occasional or sporadic ordering of office supplies from an out-of-state vendor are not sufficient to confer jurisdiction under the FLSA.") citing *Williams v. Signature Pools & Spas, Inc.,* 615 F.Supp.2d 1374, 1380 (S.D.Fla.2009)(quotations and internal punctuation omitted).  Therefore, as a matter of law, no enterprise coverage exists as to First Class.  Accordingly, the Court should grant summary judgment to First Class.

**IV.    As a Matter of Law, Plaintiffs Have Not Carried Their
        Burden to Show They Worked Without Overtime Compensation**

### 1.   *Burden of Proof Initially Rests with Plaintiff to Prove Hours Worked*

The Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq*, provides, in pertinent part, that "[e]xcept as otherwise provided in this section, no employer shall employ any of his employees…for a workweek longer than forty hours unless such employee receives

compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a).  The Act further defines the term "employ" as "includ[ing] to suffer or permit to work." 29 U.S.C. § 203(g).  The Department of Labor's regulations explain that "[w]ork not requested but suffered or permitted is work time." 29 C.F.R. § 785.11.  "If the employer knows or has reason to believe that the work is being performed, he must count the time as hours worked." 29 C.F.R. § 785.12.  Therefore, **"[i]n order to prevail on [his] claims in this case, [the] Plaintiff must prove that they suffered or permitted to work without compensation**." *Allen v. Bd. of Public Educ. for Bibb County*, 495 F.3d 1306, 1314-15 (11th Cir. 2007)(emphasis added).  In other words, the **"plaintiff[s] must demonstrate (1) [they] worked overtime without compensation and (2) the [employer] knew or should have known of the overtime work."** *Id*. (emphasis added).

### 2.  *Employer's responsibility to maintain records*

Under the FLSA, the employer generally bears the responsibility to maintain records regarding the employee's wages, hours, and other information regarding the work performed. *See Allen*, 495 F.3d at 1314-15; *see also* 29 C.F.R. § 516.2.  If the employer failed to maintain accurate and adequate records and the employer does not have convincing substitutes, then the employee can discharge the burden by proving "that [the employee] has in fact performed work for which [the employee] was improperly compensated and … produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Allen*, 495 F.3d at 1315-16 (internal quotation marks omitted).  Then, the burden shifts to the employer to "bring forth evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Id*.  If the employer

LAW OFFICE OF LOWELL J. KUVIN
17 EAST FLAGLER STREET · SUITE 223 · MIAMI, FLORIDA 33131 · TEL.: 305.358.6800 · FAX: 305.358.6808

fails to satisfy its burden, then damages may be awarded to the employee, even though the award is based on an approximate number of hours worked.  *See Id.*

### 3. *Plaintiffs Have Not Carried Their Burden to Prove They Worked Without Overtime Compensation*

Defendants recognize that the burden of proof can shift when an employer's records fail to track the uncompensated time.  However, this burden shifting is not automatic.  The employee <u>must</u> first prove "that he has in fact performed work for which he was improperly compensated" by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Fast v. Applebee's International, Inc.*, 638 F.3d 872, 882 (8th Cir. 2011)(quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946)).  Significantly, only if the employee satisfies this requirement does the burden shift to his employer "to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Id.*  Courts have held employees to this burden, finding against them when employees failed to carry their evidentiary burdens even where the employers lacked records.  *See DiSantis v. Morgan Properties Payroll Services, Inc.*, 2010 WL 3606267 (E.D. Pa. 2010); *Carmody v. Kansas City Board of Police Commissioners*, 713 F.3d 401 (8th Cir. 2013).

In the Complaint, each of the Plaintiffs made generalized statements about the number of overtime hours that they allegedly worked.  However, during their depositions, each of the Plaintiffs admitted that the number of hours set forth in the Complaint was incorrect.  Moreover, none of the three (3) Plaintiffs could provide any testimony or records of *any* specific dates worked, specific hours worked or money owed.

In the Complaint, Asalde alleged that she worked "an average of 70 hours a week for Defendants". [D.E. #1, ¶18].[7]  However, at her deposition, she admitted that the Complaint is incorrect because it states she worked 30 overtime hours every week, but she did not work that many hours every week. [D.E. #29-4, p.22, lns. 21-25; p.23, lns.1-2].  Significantly, she has no records of the hours she worked for First Class. *Id*. at p.26, lns.4-10 & 11-13.  She was paid at the end of each event, so she would know if she was not paid for every hour she worked. *Id*. at p.30, lns.15-18.  She admits she was paid for every hour she worked (*id*. at p.30, lns. 18-22), but claims that she was not paid the overtime premium for the hours she worked over 40. *Id*. at p.28, lns.7-12.  However, she does not know how many hours she worked each week, but could only say she worked more than 40. *Id*. at p.15, lns.8-11.  She would sign in on a sheet of paper when she started working (*id*. at p.29, lns.6-8) and would sign out when she stopped working (*id*. at p.29, ln. 22–p.30, ln.3), and did so every time she worked. *Id*. at p.30, lns.6-11.  She admitted that there were weeks when there were no events at the Convention Center or at the Fillmore, and so she did not work.  *Id*. at p.21, ln.24-p.22, ln.5; p.20, lns.22-25; p.21, lns.12-17.  She did not know the dates she worked at the Convention Center. *Id*. at p.19, lns.23-25; p.20, lns. 8-12; p.20, lns. 13-17.  She could only remember working during the boat show and the auto show. She cannot remember any other dates. *Id*. at p.20, lns.8-17.

In the Complaint, Conde alleged that he worked "an average of 48 hours a week for Defendants". [D.E. #1, ¶19].  However, at his deposition, he admitted that he did not work 48 hours every week.  [D.E. #29-2, p.12, ln.24-p.13, ln.1; p.19, lns.20-22].  While working at the Williams Island (Admiral's Port) location, he worked only one shift per week.  *Id*. at p.18, lns.

---

[77]  Although the Complaint states that Asalde worked for First Class from January 9, 2013 through December 1, 2015 [D.E. #1], she admitted at her deposition that she actually worked from January 9, 2013 through October 16, 2015. [D.E. #29-4, p.9, lns.19-24; p.32, lns.7-9].

LAW OFFICE OF LOWELL J. KUVIN
17 EAST FLAGLER STREET · SUITE 223 · MIAMI, FLORIDA 33131 · TEL.: 305.358.6800 · FAX: 305.358.6808

22-25.  Significantly, Conde admitted that he was paid for all of the hours he worked (*id*. at p.12, lns.19-21), but claims that he was not paid the overtime premium (half-time) for hours worked over 40. *Id*. at p.35, lns. 2-11; p.40, lns. 12-16.  He testified that he clocked in every day when he went to work, and clocked out every day when he left work. *Id*. at p.33, lns.13-17; p.34, lns. 5-7; p.34, ln.24-p.35, ln.1.  He could not identify any days that he worked overtime for First Class. *Id*. at p.31, lns.23-3.

In the Complaint, Savinovich alleged that he worked "an average of 58 hours a week for Defendants". [D.E. #1, ¶¶20-21].  However, at his deposition, he admitted that that figure was inaccurate. [D.E.#29-3, p.35, ln.12–p.36, ln.14; p.9, ln.8-p.10, ln.7].  He admitted that that he was paid for all of the hours he worked (*id*. at p.59, lns.12-14), but claimed that he was not paid the overtime premium (half-time). *Id*. at p.59, lns.15-17 & lns. 21-24.  He has no written records, paperwork or pictures to prove that he worked 58 hours per week.  *Id*. at p.53, lns.12-16.  He cannot identify any specific days he worked and how many hours he worked for a specific day. *Id*. at p.53, ln.24-p.54, ln.3.  First Class always used a time clock, and the first thing he did when he got to work was to clock in. *Id*. at p.49, lns.18-20; p.48, lns.21-24.

As set forth above, none of the three (3) Plaintiffs could provide any answers as to *any* particular dates they worked, and therefore they have failed to meet their respective burdens. None of the Plaintiffs have records of the number of hours they worked.  Further, each of the Plaintiffs admitted that they always signed in and out of work and were paid their regular wages for every hour worked.

Significantly, each of the Plaintiffs has failed to produce any records or testimony of *any* specific days and hours that they worked for which they were not paid.  Not once during the litigation have Plaintiffs identified *any* specific dates worked, specific hours worked or money

Law Office of Lowell J. Kuvin
17 East Flagler Street · Suite 223 · Miami, Florida 33131 · Tel.: 305.358.6800 · Fax: 305.358.6808

owed.  As a result, Plaintiffs' FLSA claims fail as a matter of law because they have not produced sufficient evidence to show they "ha[ve] in fact performed work for which [they were] improperly compensated" and "the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 678-88 (1986). Furthermore, the fact that Plaintiffs are only seeking payment of half-time wages (and not regular wages) necessarily means that they were paid wages for all hours worked.  Significantly, each of the Plaintiffs admitted that *there was never a shift that they worked for First Class for which they were not paid*.  [D.E. #29-3, p.59, lns.12-14; D.E. #29-2, p.12, ln.19-21; p.35, lns.2-11; p.40, lns.12-16; D.E. #29-4, p.28, lns.7-12; p.30, lns.18-22].

In *DiSantis*, the district court granted summary judgment where the plaintiff relied on "vague, conclusory, and speculative testimony to support [the plaintiff's] claim that she 'often worked more than 40 hours in weeks of her employment from the start of her employment until the end of her employment.'" 2010 WL 3606267 at *13.  The court noted the plaintiff was unable to even give an estimate of the hours worked, much less a credible basis for any such estimate. "DiSantis's use of language such as 'sometimes' and 'pretty much' highlights the vagueness of [the plaintiff's] testimony. Further, [the plaintiff's] testimony is so scattered and inconsistent, as evidence by her references to 'pretty much every week' and 'almost every week' at some points in her testimony when she attempts to specify when she worked unpaid overtime, as compared to other parts of her testimony where she tries to narrow the time frame." *Id*. at *14.

The Eighth Circuit addressed this issue in *Carmody*, upholding the district court's ruling that Kansas City police officers failed to provide enough proof to survive summary judgment in an FLSA claim.  The police officers alleged that their captain used a flex time policy from 2006 until 2009 in which officers received flex time or time off rather than receiving overtime

compensation. *Carmody*, 713 F.3d at 403.  Neither the city nor the officers tracked the accrued flex time, and the flex time was allegedly lost if not used within a short period. *Id*. The Internal Affairs Department of the Kansas City Police Department (the "IA") investigated the flex time policy and concluded that the officers worked unpaid overtime hours. *Id*.  Based on department documents, the IA investigation showed the officers had worked 481 unpaid overtime hours. *Id*. However, the IA report could not determine whether the officers were given flex time for the unpaid overtime, and stated that the police officers were unable to "identify specific occurrences when flextime was mandated." *Id*.  The police officers sued the city, and the district court granted summary judgment for the city. *Id*. at 405.  The Eighth Circuit upheld the district court's ruling, concluding that the officers' evidence was insufficient because the IA investigation could not determine whether flex time or time off was used in lieu of overtime pay. *Id*. at 406-7.  The court noted that the city's failure to keep accurate records allowed the district court to apply the relaxed evidentiary standard pronounced in *Anderson*. *Id*. at 406.  Thus, the officers' initial burden was to prove that they carried flex time hours into a new work week, or went entirely unpaid for those hours. *Id*. at 406.  The evidence before the court demonstrated that the officers were unable to identify specific occurrences when flextime was mandated. *Id*.  The officers also could not provide evidence of specific dates worked, specific hours worked, or money owed. *Id*. at 407.  Thus, the officers were unable "to identify any record evidence showing actual damages from unpaid work in excess of forty hours per week, in violation of the FLSA." *Id*. Considering this evidence, the Eighth Circuit concluded:

> The city's failure to provide accurate time records **reduces the officers' burden, but does not eliminate it.** Even though *Anderson* relaxes the burden of proof, **the officers must still prove the existence of damages.** *See Anderson*, 328 U.S. at 688. Viewed in the light most favorable to the officers, the officers have failed to provide any evidence of actual

damages. **Without record evidence of a single hour worked over forty hours that did not receive overtime wages or flextime, the officers' unsupported estimations of the unpaid hours due are not enough.**

*Id.* (emphasis added).

An employee who sues for overtime compensation under the FLSA bears the burden of proof by a preponderance of the evidence that his employer failed to properly compensate the employee for the completed work week-by-week. *See Olson v. Star Lift, Inc.*, 709 F.Supp.2d 1351 (S.D. Fla. 2010); *Laplante v. Lake Worth Terrace Rehabilitation*, 725 F.Supp.2d 1358 (S.D. Fla. 2010); *Myers v. The Copper Cellar Corporation*, 192 F.3d 546, 551 (6th Cir. 1999). It is also settled that a plaintiff must actually prove the hours worked and the overtime owed. *See Gatto v. Mortgage Specialists of Illinois, Inc.*, 442 F. Supp. 2d 529, 534-36 (N.D. Ill. 2006) (stating that when the only evidence is plaintiff's "declaration asserting without specificity that she worked more than 40 hours per week . . . [t]hat . . . is not sufficient to create a genuine issue of fact"); *Haywood v. North Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997) (stating that "conclusory allegations and selfserving [sic] affidavits [regarding hours worked], if not supported by the record, will not preclude summary judgment"); *Malbranche v. Art Hall Protection Servs., Inc.*, Case No. 03-22726-CIV-KING at 5-7 (Dec. 20, 2006)(granting summary judgment for the defendant and noting that the plaintiffs were guessing as to the hours that they worked, and thus would be guessing as to what they would be owed at trial), aff'd, 2007 WL 4275513 (Dec. 7, 2007).

As set forth above, the fact that Plaintiffs are only seeking payment of half-time wages (and not regular wages) necessarily means that they were paid wages for all hours worked. Significantly, Plaintiffs admitted that *there was never a shift that they worked for First Class for which they were not paid.* [D.E. #29-3, p.59, lns.12-14; D.E. #29-2, p.12, ln.19-21; p.35, lns.2-

11; p.40, lns.12-16; D.E. #29-4, p.28, lns.7-12; p.30, lns.18-22].   Accordingly, Plaintiffs have

failed to adduce sufficient record evidence to show that they suffered actual damages, as is

required by *Anderson. Anderson*, 328 U.S. at 688.  To meet their initial burden, Plaintiffs must

show they worked hours for which they were not compensated.  *See Anderson*, 328 U.S. at 688;

*Dole v. Tony & Susan Alamo Found.*, 915 F.2d 349, 351 (8th Cir. 1990) (requiring the plaintiff

to produce evidence of uncompensated labor before shifting the burden).  Plaintiffs have failed to

do so.

Perhaps the reason Plaintiffs cannot point to any specific dates for which they were not

properly paid, is that they were properly paid in every instance and there is significant evidence

of same.  According to the work and pay records for each of the Plaintiffs (which were produced

during discovery) each of the Plaintiffs were properly paid for all hours that they worked for

First Class including any overtime hours. [D.E. #29-6, ¶¶8-9].  Further, Plaintiffs admitted that

*there was never a shift that they worked for First Class for which they were not paid*.  [D.E. #29-

3, p.59, lns.12-14; D.E. #29-2, p.12, ln.19-21; p.35, lns.2-11; p.40, lns.12-16; D.E. #29-4, p.28,

lns.7-12; p.30, lns.18-22].  The only record of the hours Plaintiffs worked and were paid for are

the records produced by First Class.  As set forth above, Plaintiffs have not provided any specific

dates that they allegedly worked and were not properly paid.  Moreover, the fact that Plaintiffs

are only seeking payment of half-time wages (and not regular wages) necessarily means that they

were paid their wages for all hours worked.  Those hours are reflected on the records produced

by First Class during discovery.

A defendants' failure to provide accurate time records reduces a plaintiff's burden, but

does not eliminate it.  Even though *Anderson* relaxes the burden of proof, Plaintiffs must still

prove the existence of damages.  *Anderson*, 328 U.S. at 688.  Here, Plaintiffs cannot establish

that First Class' records are inaccurate or inadequate.  It is therefore undisputed that Plaintiffs were paid for all overtime hours reported.

Viewed in the light most favorable to Plaintiffs, Plaintiffs have failed to provide any evidence of specific dates worked, specific hours worked and money owed. Without record evidence of a single hour worked over forty hours for which they did not receive overtime wages, Plaintiffs' general, unsupported estimations of the unpaid hours due are not enough. Plaintiffs cannot proffer any evidence that they were not paid for all the hours they worked, and therefore have failed to meet their burden.  This Court should grant Defendants' instant Motion.

## V.      __Defendants, Jorge Zuluga and Sebastian Lopez Were Not "Employers"__

Defendant, JORGE ZULUAGA ("Zuluga") and Defendant, SEBASTIAN LOPEZ ("Lopez") cannot be held individually liable for violating the overtime provisions of the FLSA unless they are "employers" within the meaning of the Act. 29 U.S.C. § 207(a)(1).  Section 203 broadly defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  The Supreme Court has termed the Act's employer definition "expansive" and has held that "managerial responsibilities" and "**substantial control** of the terms and conditions of the [employer's] work" create statutory employer status. *Falk v. Brennan,* 414 U.S. 190, 195 (1973)(emphasis added).

*Patel v. Wargo*, 803 F.2d 632 (11th Cir. 1986), is instructive.  In *Patel*, the Eleventh Circuit Court of Appeals upheld the decision of the District Court that the defendant's status as president, director and principal stockholder of the corporation did not make him an employer under the FLSA even though he arranged the contract and worked out the details with the plaintiff; he did not take such an active role as to be held personally responsible.  *Id*. at 638.

The *Patel* Court distinguished the holding in *Donovan v. Agnew* finding that "corporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of nonpayment" were employers within the meaning of the FLSA. *Donovan v. Agnew,* 712 F.2d at 1514. "In contrast to the *Agnew* case, the facts in [*Patel*] indicate that the [President] did not have operational control of significant aspects of the [company's] day-to-day functions, including compensation of employees or other matters 'in relation to an employee.'" *Patel*, 803 at 638.

Conde testified that he did not know who hired him. [D.E. #29-2, p.20, lns.20-21]. When Conde needed a day off, he asked his supervisor, Guillermo. *Id*. at p.29, ln.25-p.30, ln.7. It was never Lopez or Zuluaga that he asked for a day off. *Id*. at p.30, lns.6-13.

Savinovich testified that Joe Shumar hired him to work, and not Zuluaga or Lopez [D.E. #29-3, p.57, lns.15-18. His supervisor, Able Ortiz, made the schedule. *Id*. at p.50, ln.17; p.55, lns.24-25. If he needed a day off, he would ask his supervisor. *Id*. at p.45, lns.15-17.

Zuluaga is the President of First Class [D.E. #29-5]. He does not have an active role in the day-to-day valet parking operations at the various parking lots. *Id*. Zuluaga did not hire or fire any of the Plaintiffs, set the pay rate for any of the Plaintiffs, set the schedule for any of the Plaintiffs or supervise any of the Plaintiffs. *Id*. Further, he did not exercise any control over any of the Plaintiffs' work nor the terms and conditions of any of the Plaintiffs' work. *Id*.

Lopez is the Director of Operations of First Class [D.E. #29-6]. Although he handles the day-to-day operations for First Class such as contract negotiations, he does not have an active role in the valet parking operations at the various parking lots. *Id*. Lopez did not hire or fire any

LAW OFFICE OF LOWELL J. KUVIN
17 EAST FLAGLER STREET · SUITE 223 · MIAMI, FLORIDA 33131 · TEL.: 305.358.6800 · FAX: 305.358.6808

of the Plaintiffs, set the pay rate for any of the Plaintiffs, set the schedule for any of the Plaintiffs or supervise any of the Plaintiffs. *Id.* Further, he did not exercise any control over any of the Plaintiffs' work nor the terms and conditions of any of the Plaintiffs' work. *Id.*

Like the president in *Patel*, Zuluga and Lopez were merely officers of a corporation and owned a business. Neither Zuluga nor Lopez took such an active role in the day-to-day operations of First Class as the corporate officers in *Agnew*. The overwhelming weight of the evidence establishes that neither Zuluga nor Lopez exercised substantial control over Plaintiffs.

Even when the facts of the case are construed in a light most favorable to Plaintiffs, neither Zuluga nor Lopez can be found to have been Plaintiffs' employer. There is not any testimony or other evidence that Plaintiffs can point to that infers that Zuluga or Lopez had "substantial control of the terms and conditions of the [Plaintiffs'] work" in order to create statutory employer status. *Falk v. Brennan,* 414 U.S. 190, 195 (1973).

WHEREFORE, Defendants respectfully request that the Court grant the instant Motion in its entirety, and award summary judgment in favor of Defendants and against Plaintiffs, and grant such other and further relief as the Court deems just and proper.

Respectfully Submitted, June 20, 2016

/s/ Lowell J. Kuvin
Lowell J. Kuvin
Fla. Bar No.: 53072
Sundeep K. Mullick
Fla. Bar No.: 18175
lowell@kuvinlaw.com
sunny@kuvinlaw.com
Law Office of Lowell J. Kuvin
17 East Flagler St. Suite 223
Miami, Florida 33131
Tel:     305.358.6800
Fax:     305.358.6808
*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**RODRIGUEZ, et al. v. FIRST CLASS PARKING SYSTEMS LLC, et al.**
**CASE #: 14-24377-CIV-UNGARO/OTAZO-REYES**

### Service List

**Lowell J. Kuvin, Esq.**
*Law Office of Lowell J. Kuvin*
17 East Flagler Street, Suite 223
Miami, Florida 33131
Tel.: 305.358.6800
Fax: 305.358.6808
Primary Email: lowell@kuvinlaw.com
Secondary Email: esther@kuvinlaw.com
*Attorney for Defendants*

**J.H. Zidell**
**Rivkah Jaff**
*J.H. Zidell, P.A.*
300 71st Street, Suite 605
Miami Beach, Florida 33141
Tel: 305.865.6766
Fax: 305.865.7167
Email: ZAbogado@aol.com
*Attorney for Plaintiff*