UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-20027-CIV-MGC

FLOR ANDREA RODRIGUEZ ASALDE,　)
JOHN CONDE, JAVIER ANTONIO　　　)
CABRERA SAVINOVICH, BRANDON　　)
ANTHONY GOMEZ, and all others similarly )
situated under 29 U.S.C. 216(b),　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　)
　　vs.　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
FIRST CLASS PARKING SYSTEMS LLC　)
a/k/a 1ST CLASS VALET SERVICE,　　　)
SEBASTIAN LOPEZ,　　　　　　　)
JORGE ZULUAGA,　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　Defendants.　　　　　)
_____ )

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' AMENDED MOTION FOR FINAL SUMMARY JUDGMENT [DE35 & 36][1]

COME NOW the Plaintiffs, by and through undersigned counsel, and respond in

opposition to Defendants' above-described Motion filed as [DE35 & 36] and in support thereof

state as follows:

## INTRODUCTION

1.　　　This matter sounds under the Fair Labor Standards Act ("FLSA") and Florida law and

includes counts for Federal overtime and minimum wage violations against Defendants, jointly

and severally.

---

[1] The matter of *Rodriguez v. Gold Star, Inc., et al.*, is on appeal in the 11th Circuit Court of Appeals, Case No.: 16-11508-D. The case at bar and Plaintiffs' Responses in Opposition is further distinguished from *Rodriguez v. Gold Star, Inc., et al.*, as the record herein is far more factually developed as to interstate commerce.

2.      Defendants moved for final summary judgment [DE35 & 36] asking the Court to find as a matter of law that: a) there is no individual coverage for Plaintiffs under the FLSA; (b) there is no enterprise coverage as to Defendants under the FLSA;[2] (c) Plaintiffs have not carried their burden to show that they worked without overtime compensation; and (d) the individual Defendants, SEBASTIAN LOPEZ ("Lopez") and JORGE ZULUAGA ("Zuluaga"), were not Plaintiffs' "employers" as defined by the Act.

3.      As set forth herein: (a) the facts of this case and the record testimony clearly demonstrate that individual FLSA coverage and enterprise coverage apply under prevailing law in light of the facts in this case as evaluated under the application of *Polycarpe*, specifically the handling clause; (b) Plaintiffs can establish by just and reasonable inferences the amount and extent of overtime work, Defendants' liability, and, thus their claims for overtime should proceed. Defendants have not, and cannot, offer convincing substituted to controvert or rebut Plaintiffs' worked over forty (40) hours in a week in violation of the FLSA and were not paid the applicable minimum wage in violation of the FMWA and, thus liability has been established; (c) Plaintiffs can establish, with respect to ownership, financial involvement, and the requisite operational control exhibited by the individual Defendants, that individual Defendants, Lopez and Zuluaga, were Plaintiffs' FLSA "employers" as a matter of law.

6.      Therefore, Defendants' Motion [DE35 & 36] should be denied in its entirety.

## MEMORANDUM OF LAW

A. **Summary Judgment Standard.**

Pursuant to Fed.R.Civ.P. 56, a summary judgment should be granted if, following sufficient discovery, there is no genuine issue of material fact to be decided by a jury; therefore summary

---

[2] Defendants do not address the monetary threshold prong of $500,000 herein and meet the monetary threshold requirement for the relevant years. *See* Lopez Depo. Trans. P.11, L.11-15.

judgment is to be granted as a matter of law. *Hoffman v. Allied Corp.*, *et al.,* 912 F.2d 1379, 1383-84 (11ᵗʰ Cir. 1990), *citing, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In determining if a genuine issue exists, the court must query whether "a reasonable jury could return a verdict for the nonmoving party…."  *Hoffman v. Allied Corp.*, *et al.,* 912 F.2d at 1383. *See also, Beal v. Paramount Pictures Corporation*, 20 F.3d 454, 459 (11ᵗʰ Cir. 1994)("Summary Judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law"); *Silas v. Hillsborough County*, 2006 U.S. Dist. LEXIS 79503, *3-4 (M.D. Fla. 2006)(in FLSA matter court found "[s]ummary judgment is proper if following discovery … there is no genuine issue as to any material fact…."). Defendants' Motion [DE40, 41, 42] should be denied in its entirety as genuine material disputes prevent the Court from making the factual findings necessary to determine summary judgment to be entered for Defendants as a matter of law. Thus, summary judgment is inappropriate.

B.    **FLSA Coverage/Subject-Matter Jurisdiction Is Present In The Instant Case.**

   29 U.S.C. 203(s) defines "enterprise" coverage as an enterprise where it "(i) has employees engaged in commerce or in the production of goods for commerce, or…has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." [3] As stated, Defendants stipulated that their annual gross sales exceeded $500,000 for the relevant time period. *See* Lopez Depo. Trans. P.11, L.11-15. Jurisdiction under the FLSA then turns on whether Defendants have employees engaged in commerce or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person."

---

[3] Defendants do not address the monetary threshold prong of $500,000 herein and meet the monetary threshold requirement for the relevant years. *See* Lopez Depo. Trans. P.11, L.11-15.

As to the interstate commerce prong of enterprise coverage, on 8/31/10 the Eleventh Circuit rendered a decision in the consolidated matter of *Polycarpe et al. v. E & S Landscaping*, 616 F.3d 1217 (11th Cir. 2010). This Court's holding in *Polycarpe,* is that the 1961 amendments expanded the reach of the act to business providing services that are otherwise locally focused.[4] This Court in *Polycarpe* held that the 'handling clause' is an independent basis for enterprise coverage and that FLSA coverage could be established through the handling clause. *Polycarpe v. E & S Landscaping Service, Inc.*, 616 F.3d 1217, 1220-1221 (2010) (Emphasis, and citations in original). The two-part test announced in *Polycarpe* is that the item must fit within the definition of materials, and the item meeting the definition must have a significant connection to the business activities of the enterprise. *Id*. Meaning if two or more employees handled interstate materials then the Act's coverage would apply to a business meeting the 500,000-dollar threshold. *Polycarpe* clarified that, in this Circuit, it is now of no consequence if the goods have "come to rest"--there is no continuity requirement, and enterprise coverage is triggered so long as the employees have, pursuant to 29 U.S.C. Section 203(s)(1)(A)(i), handled, sold or worked with goods "that have been moved in or produced for commerce."  616 F.3d, at *5-6 (LEXIS pagination). Consequently, from whatever prism *Polycarpe* is analyzed, it is clear, for example, that a defendant-employer can no longer argue that the employees' handling etc. of the goods or

---

[4] It is too narrow an interpretation to assume that the term "goods" and "materials" share the same statutory definition and it would be necessary to wholly ignore the 1974 amendment to 29 U.S.C. 203(s)(1)(A)(i), as well as the accompanying Senate Report. The bill adds the work "or materials" after the word "goods" to make it clear that the Congressional intent to include within this additional basis of coverage the "handling of goods consumed in the employer's business" (i.e. the automobiles). *See* S. Rep. No. 93-690, 93rd Cong., 2nd Sess. At 17 (1974); *See also Exime v. E.W. Ventures, Inc.,* Case No. 08-cv-60099, 2008 WL 5381294 (S.D. Fla. Dec. 23, 2008) (decided by this Court) and *Saucedo v. Phoenix Auto Sales, Inc.,* Case No. 08-cv-21156-Altonaga/Brown at 7-8 (S.D. Fla 1/5/09).

materials, that were merely manufactured outside of Florida (when the $500,000 threshold is met), is not sufficient interstate commerce as a matter of law.

*Polycarpe* is on point and makes it clear that Defendants' enterprise is a covered enterprise because Plaintiffs handled materials that travelled through interstate commerce as the essential function of their jobs. The idea that a valet parking service would be excluded from coverage simply because it is geographically limited to a local area, is at odds with this Court's interpretation of the 1961 amendments to the FLSA. In the instant case the materials are the cars parked/retrieved for customers, there were more than one valet employees parking/retrieving said cars, and the parking/retrieving of cars is the whole point of Defendants' valet business. Simply put, cars are interstate in nature, especially the wide variety at issue according to the record. Intrinsic to a valet parking service is the handling of items that have moved through interstate commerce, cars/vehicles. Considering the State of Florida does not produce cars, it is safe to assume that the cars that Plaintiffs parked/retrieved moved through interstate commerce, if for no other reason than to get from the manufacturer to the consumer of the vehicles.

Plaintiff Asalde states in his Affidavit that, "As a valet parker/runner I was responsible to drive vehicles from the entrance to the parking lot located in the back. I was responsible for parking the vehicle, issuing a ticket which we would write the model of the vehicle, color of the vehicle, and my name. One half of the ticket issued I would leave in the vehicle on the dash board and the other half of the ticket that contained the information herein listed I would leave on the key. After I had parked the vehicle and wrote the information on the ticket I would then be responsible for giving the ticket with the key to the key-holder and the key with the ticket would then be placed on one of the key holders to be retrieved at a later time. I was responsible to then return to the entrance to wait for another vehicle to come. During the relevant time period, I

recall there were many customer from outside the country who would come to the different locations I was assigned to work at for Defendants, for example tourists/visitors from Colombia, Argentina, Venezuela, Chile, Canada, India, Israel, Mexico, and Peru, and I would drive their rental vehicles so that they could be parked and/or returned to them when they were leaving the building. The locations that I worked at, had customers that were regularly travelling through the State of Florida and/or visiting the State of Florida from outside the State of Florida and/or the country. I recall many customers who lost their tickets and could not recall the make and/or model of their vehicle as it was a rental and not their own." *See also* Conde's Interrogatory Response Nos.2 and 4.

As the Supreme Court held in 1943, in *McLeod v. Threkeld* and *Overstreet v. North Shore Corp.,* the words "engaged in commerce" should be broadly construed to extend the reach of The Act. *See, McLeod v. Threkeld*, 319 U.S. 491 at 501 (1943)&*Overstreet v. North Shore Corp.*, 318 U.S. 125 (1943). Even before the amendments, the Act has been consistently interpreted to extend coverage to more enterprises, and not fewer. In the instant case the question is whether valeting a car that has previously traveled through interstate commerce, is sufficient to extend coverage under the handling clause of The Act. The Court's precedent easily supports this conclusion.

> "The Defendants fall under enterprise coverage if they have 'employees handling, selling or otherwise working on materials that *have been* moved in or produced for interstate commerce.'29 U.S.C. § 203(s)(1)(A)(i) (emphasis added). 'The tense is in the past. There is no requirement of continuity in the present.' Brennan, 479 F.2d at 1031."

*Polycarpe,* 616 F.3d at 1221. (emphasis original) (*Brennan v. Green's Propane Gas Service, Inc.*, 479 F.2d 1027 (5th Cir. 1973).

The job of a valet is to handle a vehicle that has been moved in or produced for interstate commerce, and provide the service of parking said vehicle and then retrieving it. If nothing else a valet handles and otherwise works on a vehicle in both parking and delivering the vehicle. This is the central function of Plaintiffs' job for Defendants, and Defendants' business activities in general. *See* Plaintiff Savinovich Aff. ¶¶ 32-35. *See Brennan v. Wilson Bldg., Inc.,* 478 F.2d 1090 (5th Cir. 1973); *See also Mitchell v. Sunshine Dep't Stores, Inc.*, 292 F.2d 645 (5th Cir. 1961). *See also* Conde's Interrogatory Response No.5.

In *Saucedo*, the Court (the Honorable Judge Altonaga) analyzed the issue of enterprise jurisdiction under the FLSA and the question of whether such jurisdiction exists where the employer handled materials that previously moved in commerce. *Id.* In said matter, Plaintiffs were car salesmen who were employed by Defendants whose business sold a mixture of domestic and foreign vehicles that were bought from local auctions and then resold at two car lots located in South Florida. *Id.* Defendants had stipulated to the fact that their business met the monetary threshold requirement and examined the expansive applicability of interstate commerce when the monetary threshold is satisfied. *Id.* The Court held that it was sufficient that the defendant handled "automobiles that moved in interstate commerce, even though they had previously reached an ultimate consumer…" and that it is not necessary to show under an enterprise theory that a defendant employer purchased products directly from a supplier located outside the state of Florida with respect to the interstate prong. [5] *Id.*

---

[5] The automobiles that Defendants' employees "handled" (i.e. drove, parked, etc.) were a mixture of foreign and domestic cars with foreign manufactured and produced both inside and outside the State of Florida and carry domestic and foreign license plates. This is uncontested. Plaintiff herein requests that the Court take judicial notice of the fact that foreign automobiles are not produced in Florida and that cars carrying foreign license plates are obviously travelling inside and outside the State of Florida (traveled in interstate commerce to arrive at Defendants' place of business). *See also Saucedo v. Phoenix Auto Sales, Inc.,* Case No. 08-cv-21156-

It is an undisputed material fact that Plaintiffs parked cars including that are not manufactured in Florida, as most trace back to Japan or Germany, for their production. Plaintiff Asalde states in her Affidavit that, "Furthermore, I recall driving Hondas, Mazda, Nissans, Lexus, Mercedes, Mini-Coopers, Bentley, Escalades, and other such vehicles." *See also* Plaintiff Savinovich Aff. ¶¶46-47. At a minimum in the vehicles' trip from the manufacturer to the dealership was interstate. If Mercedes, Mazda and the other manufacturers accidently manufactured some of the cars in Florida, such would be inconsequential, "No Deminimus rule applies to the Act; any regular contact with commerce no matter how small, will result in coverage." *Marshall v. Victoria Tansp. Co., Inc.*, 603 F.2d 1122 at 1124 (5th Cir. 1979).

Additionally Plaintiffs regularly parked cars with out of state license plates. Plaintiff Asalde states in her Affidavit that, "I recall driving vehicles that had license plates from outside the state of Florida such as New York, New Jersey, Georgia, Ohio, Washington, and North Carolina. The locations that I worked at, such as the Miami Beach Convention Center and the Fillmore Miami Beach had customers that were regularly travelling through the State of Florida and/or visiting the State of Florida from outside the State of Florida and/or the country. I also handled or otherwise worked with the traffic cones (neon orange and white/reflective stripes) and placed the "valet" signs so that customers could clearly see the marked areas." *See also* Lopez

Altonaga/Brown [DE54, FN5] (S.D. Fla. 1/5/09) ("Defendants claim Plaintiffs have failed to establish the automobiles sold by Phoenix moved in interstate commerce. As noted, Robert Norris stated Phoenix carried a mixture of foreign and domestic cars. (*See Pl. Mat. Facts* at 3 (citing *Dep. of R. Norris*))). Plaintiffs ask the Court to take judicial notice of the fact that foreign automobiles are not produced in Florida and attached a print-out from the Toyota website to support this proposition. It is safe to assume vehicles sold at Phoenix were produced outside Florida and traveled in interstate commerce to get there.). Exhibit "A." In the alternative, in the case at bar, should the Court find that there is insufficient information in the record demonstrating the vehicles Defendants' employees were driving and parking were not produced outside of Florida, Plaintiff respectfully requests discovery be re-opened for the limited purpose of conducting discovery relevant to same.

Depo. Trans. P.9, L.20-25. Plaintiffs, along with the other valet parkers, were handling cars as the material necessary to do the job of valet parking, and these interstate materials are the central focus of the business of valet parking, the commercial activity of Defendants. Hence, two or more employees were handling materials that traveled through interstate commerce for their Defendant-employer, making Defendants a covered enterprise under the FLSA.

This Court in *Polycarpe* holds that "'materials' in the FLSA means tools or other articles necessary for doing or making something." *Ploycarpe*, 616 F.3d at 1224. To perform the services of a valet, the vehicle being parked/retrieved is a necessary article. "...Where a business provides a service using an item as part of its 'commercial operations,' Congress intended for those kinds of items to be viewed as 'materials.'" *Id. a*t 1225. The item that is being used by the commercial operation of Defendants' valet service is the vehicle being parked. This Court holds in *Polycarpe* that the material must have a significant and not incidental relationship to the business activity. The business activity of Defendants' valet company was the parking of vehicles, making the vehicles significantly related to the business activity of Defendants. The parking of a vehicle by a valet is not incidental to the business activities of a valet company. The vehicles were clearly handled under this Court's standard of what constitutes handling. "The ordinary meaning of 'handling' in the business world to which the FLSA speaks is to 'have or cause to pass through one's hands in commercial transactions....'" *Id. a*t 1226. In accordance with this definition, the vehicles passed through the hands of Plaintiffs in the course of valet parking them. Plaintiffs were also regularly handling products that were coming from outside the state of Florida and/or outside the country other than the vehicles. Plaintiff Savinovich states in his Affidavit that, "Also, for the first part of my employment with Defendants I would receive payment from customers/passengers by credit card and I would be responsible for using the credit card machine

in order to process their payments. I also had to regularly and daily handle cash/money given to me by Defendants' customers/passengers in order to pay for Defendants' valet services. During my employment with Defendants, as a valet parker/runner I was also responsible to assist security when they needed to take a bathroom/cigarette break, attend to a fire alarm, and/or other matters. When I had to assist at the security desk I would be responsible for leaving the valet desk and would assist security (i.e. answer the phone, check in guests, give out packages/parcels that were delivered and arrived from UPS/FED EX/AMAZON/DHL, open the doors for customers/residents, operate the elevators, and other security duties). While assisting security, I was regularly handling products that were coming from outside the state of Florida and/or outside the country such as packages/parcels that were delivered and arrived by UPS/FED EX/AAZON/DHL, etc."

This matter is analogous to *Rodilla, et al. v. TFC-RB, LLC, et al.,* Case No. 08-cv-21352-AMS [DE100] (S.D. Fla. 11/04/09) wherein plaintiffs worked for defendants as car porters for defendants for varying lengths of time transporting rental cars for car agencies from one point to another at the Fort Lauderdale Airport so that the cars could be serviced and/or cleaned and then returned to the rental car agencies. Therein, defendants' met the $500,000 monetary threshold requirement for FLSA coverage but contested that interstate commerce prong had been met. *Id.* In determining whether an employee is engaged in interstate commerce within the meaning of the FLSA, the courts have been "guided by practical considerations." *Marshall v. Victoria Transp. Co.*, 603 F.2d 1122, 1123 (5th Cir. 1979)[6] (quoting *Overstreet v. North Shore Corp.*, 318 U.S. 125 (1943) (quoting *Walling v. Jacksonville Paper Co.*, 317 U.S. 564 (1943)). In making

---

[6] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

this determination, the courts look to see if an employee's work "is actually in commerce or is so closely related to the movement of commerce that it is for practical purposes a part of it rather than an isolated local activity." *Id*. (citing *Mitchell v. C.W. Vollmer & Co.,* 349 U.S. 427 (1955)). Coverage for "employees doing work related to instrumentalities of commerce" is addressed 29 CFR § 776.11.  In *Rodilla, et al.,* for purposes of enterprise coverage, the court (the Honorable Judge Simonton) determined whether any of the defendants' employees were engaged in commerce by performing work involved in the maintenance, repair or improvement of existing instrumentalities of commerce. *Rodilla, et al. v. TFC-RB, LLC, et al.,* Case No. 08-cv-21352-AMS [DE100] (S.D. Fla. 11/04/09); *See also Hertz Drivurself Stations, Inc. v. United States,* 150 F.2d 923 (8th Cir. 1945); *Brennan v. Ventimiglia*, 356 F. Supp. 281 (N.D. Ohio 1973). The Court held that plaintiffs' work is immediately connected with maintaining and keeping the vehicles in condition for future use, which regularly includes the transportation of persons traveling across state lines, and, in this regard, the rental cars may well be considered instrumentalities of commerce, because 29 C.F.R. § 776.11 confirms that instrumentalities of commerce include vehicles regularly used in transportation of persons or goods in commerce. *Id.*

Plaintiffs and other employees' work immediately connected with maintaining and keeping vehicles in condition for future use, which regularly includes the transportation of persons travelling across state lines, and said cars should be considered instrumentalities of commerce because C.F.R. 776.11 confirms that instrumentalities of commerce include vehicles regularly used in transportation of person or goods in commerce. *See also Hertz Drivurself Stations, Inc. v. United States,* 150 F.2d 923 (8th Cir. 1945); *Brennan v. Ventimiglia,* 356 F. Supp. 281 (N.D. Ohio 1973) (the court held that the defendants' employees were engaged in commerce, in part, because they serviced cars which had been or would be used for interstate

commerce). Plaintiff Savinovich states in his Affidavit that, "I also was responsible to call taxis for customers/passengers who needed to be taken from Defendants' place of business to the airports in Fort Lauderdale and Miami and/or to the Port of Miami. I recall customers/passengers requesting that we call a taxi so that they could be at the airports and/or ports by a specific time so as to catch their planes/boats."

The nature of the activities of the employee are determinative, not the local nature of the service. The Supreme Court held that the local nature of the business is irrelevant if the activities of the employees touch on interstate commerce, and further that, "We said in Jacksonville Paper Co., case, supra, 'It is clear that the purpose of the Act was to extend federal control in this field through the farthest reaches of the channels of interstate commerce.'" *Overstreet v. North Shore Corp.*, 318 U.S. 125 at 128 (1943). The "crucial test is the nature of the activities of the employee, rather than the general character of the employer's business. *Writz v. Whol Shoe Co.*, 382 F.2d 848, 850 (5th Cir. 1967)." *Brennan v. Wilson Bldg., Inc.*, 478 F.2d 1090 at 1094 (5th Cir. 1973). Courts have specifically rejected the argument that a business/service being local in nature is determinative of FLSA coverage, and held that the local nature of the business is not determinative of The Act's coverage. See, *Brennan v. Wilson Bldg., Inc.*, 478 F.2d 1090 at 1095 (5th Cir. 1973) &*Overstreet v. North Shore Corp.*, 318 U.S. 125 (1943). This is bolstered by the fact that Plaintiff and other employees of Defendants moved automobiles (i.e. Toyotas, BMWs, etc.), that were foreign and domestically manufactured and produced and had foreign and domestic license plates, at Defendants' lot. *See W.D. Jackson v. Airways Parking Company,* 297 F. Supp. 1366 (N.D. Ga. 1969).

Plaintiffs handled other "materials" (i.e. pens, walkie-talkies) that had a significant and not incidental relationship to Defendants' business activity. Plaintiff Savinovich states in his

Affidavit that, "During the relevant time period, I also handled, sold, or otherwise worked on goods or materials that have been moved in or produced for commerce such as my walkie-talkie; initially we used Motorola walkie-talkies and then when they broke we used another walkie-talkie called Veretex Standard. I have researched online using Google and have determined that Veretex Standard's engineering team is based in Tokyo, Japan.  To the best of my recollection, the walkie-talkies were Motorola and Veretex Standard and were used on a daily basis by me and at least one other of Defendants' employees. With regards to the walkie-talkies that I used during the relevant time period that I worked for Defendants, a valet parker/runner was assigned one walkie-talkie and security was assigned the other so that we could be in constant communication, daily, with each other. The time-clock we used was an "Amano TCX-45." I have researched online using Google and have determined that Amano TCX-45 which is from a company Amano Cincinnati, Inc., located in New Jersey. Daily and constantly, me and Defendants' other employees would handle the time-clock to punch-in and punch-out using same." *See also* Asalde Aff. ¶¶ 46-47.

The Supreme Court has stated that the focus is on "the nature of the employee's activities rather than the character of his employer's business. Therefore, if his employees are found to be engaged in commerce, the employer cannot avoid his obligations under the Act on the ground that he is not 'engaged in commerce.' To the extent that his employees are engaged in commerce, so too is the employer." *McLeon v. Thelkeld,* 319 U.S. 491 (1943) citing *Kirschbaum v. Walling,* 316 U.S. 517, 524 (1942); *Walling v. Jacksonville Papers Co.,* 317 U.S. 564 (1943).

Plaintiff Savinovich states in his Affidavit that, "We would also punch[ed] *[sic]* the valet tickets regularly and daily when customers/passengers arrived and left. I recall using Sharpie brand highlighters on a daily basis and two or more employees, including, but not limited to,

Brandon Gomez, Julio Montero, and Antonio (Last Name Unknown), were also using the Sharpie brand highlighters daily. Also, I recall regularly using Bic pens and the box reflects that these pens were "Made in Mexico" and two or more employees, including, but no limited, Brandon Gomez, Julio Montero, and Antonio (Last Name Unknown), were using these pens on a daily basis to write down the time the vehicle had arrived and the model, color of the vehicle, and the valet parker/runners' names." *See also* Plaintiff Asalde Aff. ¶ 50.  Defendants' required Plaintiffs to wear uniforms and daily Plaintiffs, and two or more employees, were handling these uniforms so as to dress in accordance with Defendants' company policy. Plaintiff Asalde states in her Affidavit that, "Prior to commencing my employment with Defendants, I was required to purchase a shirt and jacket from them and Defendants required me and Defendants' employees to wear them daily; the shirt says "Made in Jordan" on the label and the jacket says "Made in China" on the label. Every employee had to purchase the same shirt and jacket and were required to wear them daily." *See also* Savinovich Aff. ¶ 48.

Consequently, under *Polycarpe,* the $500,000 threshold has been met and clearly (2) or more of Defendants' employees, on a regular basis, were handling goods and materials that originated from outside the state of Florida. As set forth herein, Plaintiff has successfully carried his burden of showing that Defendants, whose employees were "handling" (i.e. parking, driving, etc.) automobiles as valets for Defendants, had employees handling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and, therefore, Defendants have employees engaged in commerce as defined by the Act. Alternatively, there is at least a genuine issue of material fact as to whether FLSA coverage/subject-matter jurisdiction exists in this case and a Jury should make a determination at trial.

C.    __Plaintiffs Have Carried Their Burden To Prove Overtime Claims Under the Law.__

The onus is on Defendants to keep accurate and complete time records under *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946), and moreover, there are very specific records that must be kept pursuant to 29 CFR 516.2. "Where the employer's records of work time are inaccurate [or completely missing] and the employee cannot offer convincing substitutes . . . [] the employee has carried out [his/her] burden if he/she proves that he/she has in fact performed work for which he/she has been improperly compensated and if he/she produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the [employee] may then [be] awarded damages even though the results be only approximate. [emphasis added]." *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946). The dramatic effect of an employer's failure to maintain adequate records as required with respect to calculation of FLSA damages can be seen in *Reeves v. International Telephone and Telegraph Corporation*, 616 F.2d 1342, 1351 (5th Cir. 1980), *citing, among other cases, Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 687 (1946).  Even if the estimations by Plaintiff have been at some point inaccurate, "[i]naccurate wage and hour information, however, is not always fatal to a claim for minimum wage or overtime compensation under the Act.  Where the inaccuracy is due to the employer's failure to keep adequate records as required by statute, imprecise evidence on quantum can provide a "sufficient basis" for damages.  *Reeves* is binding old 5th Circuit precedent in the 11th Circuit as such was decided prior to close of business October 1, 1981.  *See, Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981).

To the extent that Defendants' argue that Plaintiffs cannot allege for certain the dates they worked for Defendants and how many hours they worked per week and cannot for certain allege that they worked the amount of hours as alleged in the Complaint [DE1], Defendants argument fails. It is Defendants' burden to keep time records, and they failed to do so. Defendants do **not** offer into evidence any adequate time records that controvert or rebut that Plaintiffs worked the hours they claim or pay stubs reflecting the amount Plaintiffs received in compensation for work performed by them for Defendants. **Defendants are asking the Court to make a credibility determination based on the deposition testimony of Plaintiffs.** Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 255 (1986). Such is why the Eleventh Circuit's Pattern Jury Instructions "3.4 Credibility of Witnesses", inter alia, instructs the jury as follows: "You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter."

Plaintiffs are able to provide a just and reasonable inference as to the dates they worked for Defendants and the times they worked for Defendants. *See* Asalde Aff. ¶¶ 54-57; *See also* Conde Interrogatory Responses No.13. Defendants do not have adequate records in accordance with the FLSA, see 29 C.F.R. § 516.2 particularly sub section (a)(7) which requires an employer to maintain records of the "[h]ours worked each workday and total hours worked each workweek (for purposes of this section, a "workday" is any fixed period of 24 consecutive hours and a "workweek" is any fixed and regularly recurring period of 7 consecutive workdays)". Therefore,

as Defendants records are inadequate as subject to a dispute as to their veracity, Plaintiffs should be allowed to use the more relaxed standard as set forth in *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687-688 (U.S. 1946).  Plaintiff Savinovich disputes the validity of Defendants' time records as they are inaccurate and incomplete. *See* Savinovich Aff. ¶¶ 50-52. Because the onus is on the employee to maintain adequate time records, the employees/Plaintiffs should not be penalized for failing to prove the extent of their uncompensated work. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946).

Defendants are essentially arguing that their failure to maintain adequate time records and Plaintiffs' inability to articulate with specificity the dates they worked for Defendants and the hours they worked eviscerates Plaintiffs' just and reasonable inference of Defendants' liability. Defendants believe they should be awarded summary judgment on the grounds of Plaintiffs' inability to provide counter proof of hours worked when Defendants have not met their burden of providing proof that Plaintiffs did not work the hours alleged in the Complaint [DE1] and argue Plaintiffs have failed to meet their initial burden of showing Defendants' liability by just and reasonable inference by way of their, what Defendants characterize as, inconsistent and contradictory statements. Defendants' contentions are belied on their sole reliance on framing Plaintiffs' deposition testimony as inconsistent and contradictory as a means of arguing Plaintiffs have not their burden of showing Defendants' liability; this is indicative on mere conjecture and selective reading of Plaintiffs' deposition testimony, which is misleading, to put it mildly.

C.      **Defendants Lopez and Zuluaga Were Both Plaintiffs' "Employers."**

The term "employer" ought be interpreted more broadly under the Act than common law for remedial purposes.  *See, e.g., Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2nd Cir. 1999); *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir. 1991), *citing McLaughlin*

*v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989); *Donovan v. Agnew*, 712 F.2d 1509, 1510 (1st Cir. 1983); *Falk v. Brennan*, 414 U.S. 190, 195 (1973). Further, multiple employers may be responsible for compliance with the FLSA within one business organization. *See*, *Elliott Travel & Tours, Inc.,* 942 F.2d at 965; *Agnew*, 712 F.2d at 1510. "[B]oth the employing corporation and the individual responsible for operation thereof may be employers for purposes of the FLSA." *Figueroa v. America's Custom Brokers, Inc.,* 48 F.Supp.2d 1372, 1377 (S.D. Fla. 1999), *citing Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986).  In the Eleventh Circuit, "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel*, 803 F.2d at 637-38, *quoting Agnew*, 712 F.2d at 1511. Financial control over a corporation is a significant factor in determining "employer" status. *See, Elliot Travel & Tours*, 942 F.2d 966 (6th Cir. 1991); *Donovan v. Grim Hotel Co*., 747 F.2d 966, 972 (5th Cir. 1984)(imposing FLSA liability on a "top man" who guided corporate policies and controlled "purse strings"); *Donovan v. Sabine Irrigation Co., Inc*., 695 F.2d 190, 193-95 (5th Cir. 1983)(liability for controlling finances and dominating the administration); *Dole v. Simpson*, 784 F.Supp. 538, 545-47 (S.D. Ind. 1991).  Liability may also be found even if control is restricted or exercised only occasionally as such does not diminish the significance of the existence of such control. *Herman*, 172 F.3d at 139, *quoting*, *Donovan v. Janitorial Servs, Inc.,* 672 F.2d 528, 531 (5th Cir. 1982).  *See also*, *Olivas v. A Little Havana Check Cash, Inc*., 324 Fed. Appx. 839, 846 (11th Cir. Fla. 2009), and *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1310 (11th Cir. 2013).

Both individual Defendants had ownership interest in the Defendant Corporation for the relevant years. Lopez Depo. Trans. P.14, L.3-14; Zuluaga Depo. Trans. P.19, L.12-14. Defendant

Lopez is the Director of Operations of the Corporate Defendant. [DE36, ¶65]. Lopez handles the day-to-day operations of the Defendant Corporation such as contract negotiations. [DE36, ¶68] *See also* Lopez Depo. Trans. P.16, L.9-11. Lopez goes to the office once or twice a week in relation to the operations part of Defendants' business. Lopez Depo. Trans. P.20, L.13-14. Defendant Zuluaga is the President of the Corporate Defendant. [DE36, ¶73]. Defendant Lopez and Defendant Zuluaga have similar roles concerning operational issues in the company. Zuluaga Depo. Trans. P.18, L.3-10. Defendant Zuluaga, as operation manager, would to the office on a regular basis and was overseeing the day-to-day operations of the company, along with Defendant Lopez. Zuluaga Depo. Trans. P.19, L.5-11; P.19, L.19. Lopez would determine a week ahead what the work schedule would be. Zuluaga Depo. Trans. P.22, L.9-11. Defendants exhibited the requisite operational control to be considered individual FLSA employers as a matter of law. Both individual Defendants determined the pay rate regarding the valet parkers/runners. Lopez Depo. Trans. P.18, L.1-P.19,L.1; Zuluaga Depo. Trans. P.20, L.2-5. Both Defendants have been involved in the overseeing of the business and ensuring it is operating correctly. Lopez Depo. Trans. P.21, L.1-11. Under the law set forth *supra,* both Defendants were Plaintiffs' individual FLSA employers.

Liability may also be found even if control is restricted or exercised only occasionally as such does not diminish the significance of the existence of such control. *Herman*, 172 F.3d at 139, *quoting*, *Donovan v. Janitorial Servs, Inc.,* 672 F.2d 528, 531 (5th Cir. 1982). *See also*, *Olivas v. A Little Havana Check Cash, Inc*., 324 Fed. Appx. 839, 846 (11th Cir. Fla. 2009), and *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1310 (11th Cir. 2013). Both Defendants control over Plaintiffs was <u>not</u> merely occasional or restricted (which would still be sufficient, even if it was occasionally restricted). *See also* Plaintiff Asalde Aff. ¶¶ 58-66. Conde

stated that he went to apply for a position with Defendants, filled out an application, and Luis Guillermo Salazar spoke to the owners, Sebsatian Lopez and "Don Jorge" (Jorge Zuluaga), and thereafter Conde was hired. *See* [DE29, P.20, L.5-12]. Such facts, including with respect to ownership and operational control, demonstrate that the individual Defendants, together, were Plaintiffs' FLSA employer as a matter of law. Such facts further show the role the individual Defendants directly played in relation to Plaintiffs' employment and the control exercised over same.

The word "employer" is defined broadly enough in the Fair Labor Standards Act (of which the Equal Pay Act is an amendment) to permit naming another employee rather than the employer as defendant, provided the defendant had supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation. See 29 U.S.C. § 203(d) (employer within the meaning of the Act includes "any person acting directly or indirectly in the interest of an employer in relation to an employee"); Patel v. Wargo, 803 F.2d 632, 637-38 (11th Cir. 1986); Koster v. Chase Manhattan Bank, 554 F. Supp. 285, 290 (S.D.N.Y. 1983); *Riordan v. Kempiners, 831 F.2d 690, 694 (7th Cir. Ill. 1987).* Defendants Lopez and Zuluaga were the ones who were authorized to sign checks for the relevant time period. Lopez Depo. Trans. P.13, L.19-P.14, L.1; Zuluaga Depo. Trans. P.19, L.24-P.20, L.1. Both individual Defendants have been the persons that have had the most authority over the financial business decisions of the Corporate Defendant. Lopez Depo. Trans. P.16, L.13-22; P.17, L.22-25. Defendants had direct financial involvement in Plaintiffs' employment and controlled the finances of Defendants' business. Therefore, under the law set forth *supra,* both of the individual Defendants Plaintiffs' individual FLSA employers. Viewing the facts in the light most favorable to Plaintiffs and with all reasonable inferences provided to Plaintiffs, Defendants have not established sufficient

undisputed evidence to allow the Court to determine that summary judgment should be entered as to Defendants as a matter of law.

WHEREFORE, PLAINTIFFS REQUEST THE COURT TO DENY DEFENDANTS' MOTION [DE35 & 36] IN ITS ENTIRETY.

Respectfully submitted,

J. H. ZIDELL, P.A.
ATTORNEYS FOR PLAINTIFF
300-71ST STREET, SUITE 605
MIAMI BEACH, FLORIDA 33141
305-865-6766
305-865-7167

By:_s/ Rivkah F. Jaff, Esq. ___
   Rivkah F. Jaff, Esquire
   Florida Bar No.: 107511

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE FOREGOING WAS PROVIDED VIA CM/ECF ON 7/18/16 TO THE FOLLOWING:**

**LOWELL J. KUVIN, ESQ.**
**LAW OFFICE OF LOWELL J. KUVIN**
**17 EAST FLAGLER STREET, SUITE 223**
**TEL.: 305.358.6800**
**FAX: 305.358.6808**
**LOWELL@KUVINLAW.COM**
**MIAMI, FLORIDA 33131**

**BY:__/s/____Rivkah F. Jaff_____**
**RIVKAH F. JAFF, ESQ.**