## AFFIDAVIT OF JAVIER ANTONIO CABRERA SAVINOVICH

STATE OF FLORIDA           )
                           )  S.S.:
COUNTY OF MIAMI-DADE       )

1. My name is JAVIER ANTONIO CABRERA SAVINOVICH I am over eighteen years of age; I reside in the United States, and I have personal knowledge of the matters set forth herein. I am mentally competent to sign this Affidavit and I do so freely, voluntarily, and pursuant to my own free will. I affirm that the contents of this Affidavit are true and correct and to the best of my belief.

2. I affirm that I fully understood the contents of this Affidavit prior to executing same. I read and write English and affirm that I fully understand the contents of the forgoing Affidavit in English and I am able to understand and affirm the contents of the Affidavit herein.

3. I am a Plaintiff in the United State District Court, Southern District of Florida, *Flor Andrea Rodriguez Asalde, et al. v. First Class Parking Systems, LLC a/k/a 1st Class Valet Service, et al.*, Case No.: 16-20027-CIV-MGC.

4. As to Paragraph 20, admitted.

5. As to Paragraph 21, admitted that Savinovich's duties included taking the vehicles and parking them, however, this was not Savinovich's sole responsibilities as a valet parker/runner.

6. As to Paragraph 22, admitted that Savinovich's duties included grabbing the vehicles and bringing them up the ramp to the driver, however, this was not Savinovich's sole responsibilities as a valet parker/runner.

7. As to Paragraph 23, admitted that Savinovich's duties included parking the cars, however, this was not Savinovich's sole responsibilities as a valet parker/runner.

8. As to Paragraph 24, admitted.

JC  Javier Antonio Cabrera Savinovich

9. As to Paragraph 25, admitted from on or about November 2015 through on or about April 2016, Plaintiff is not claiming overtime however Plaintiff is claiming that Defendants failed to pay Plaintiff the applicable Federal Minimum Wage required for said period and further denied as to the remaining relevant time period alleged by Savinovich.

10. As to Paragraph 26, admitted that Savinovich would ask his direct supervisor if he needed a day off but denied that Savinovich was granted said requests.

11. As to Paragraph 27, denied; Plaintiff would often assist with parking a vehicle from the shift that was ending when Plaintiff was commencing his shift and then clock-in and the clock system did not always work, and when it did not work it would take several day until it would be fixed. Thus, any clock-in records are disputed as to their accuracy and validity.

12. As to Paragraph 28, admitted that at Savinovich's post that a clock-in system was used however denied as to the validity and accuracy of said clock-in system.

13. As to Paragraph 29, admitted that Savinovich was not required by Defendants to maintain his own time keeping records however under information and belief Defendants maintained Plaintiff's time cards.

14. As to Paragraph 30, admitted that Savinovich does not have records to refer to and as such cannot provide with an exactitude the dates and times he worked for Defendants and/or the hours worked for Defendants, however denied that Savinovich is unable to provide an estimation and approximation of the dates and times he worked for Defendants and the hours worked for Defendants.

15. As to Paragraph 31, admitted.

16. As to Paragraph 32, admitted that Savinovich was hired through Defendants agent and Savinovich's direct supervisor, Josimar (Last Name Unknown).

Javier Antonio Cabrera Savinovich

17. As to Paragraph 33, admitted that Savinovich was not hired directly by Defendants Zuluaga and Lopez but rather was hired through Defendants' agent and Savinovich's direct supervisor, Josimar (Last Name Unknown).

18. As to Paragraph 34, admitted that Savinovich's claim is for the extra half time rate for any hours worked over 40 in a week as required by the Law based on his average hourly rate and/or the applicable minimum wage rate however Savinovich also has a claim for Federal Minimum Wage violations as Plaintiff's wages did not meet the applicable Federal Minimum Wage required by law for the relevant time period.

19. As to Paragraph 35, admitted that Savinovich's claim is for the extra half time rate for any hours worked over 40 in a week as required by the Law based on his average hourly rate however Savinovich also has a claim for Federal Minimum Wage violations as Plaintiff's wages did not meet the applicable Federal Minimum Wage required by law for the relevant time period.

20. As to Paragraph 65, admitted that Lopez states in his Certification that he is the Director of Operations of the Defendant, First Class Parking Systems, LLC.

21. As to Paragraph 66, admitted that Lopez did not hire or fire, set the pay rate, or set the schedules for Savinovich directly however denied that Lopez was not in direct and regular contact with Savinovich's direct supervisor.

22. As to Paragraph 67, denied.

23. As to Paragraph 68, admitted that Lopez handles the day-to-day operations for Defendant First Class Parking Systems, LLC, however denied as to the remaining statements made in Paragraph 68.

24. As to Paragraph 69, admitted that Defendant First Class Parking Systems, LLC, is a valet company however denied as to the remaining statements made in Paragraph 69.

25. As to Paragraph 70, Savinovich is without personal knowledge as to what Lopez has reviewed and/or has not reviewed during the course of discovery and, therefore, denied.

26. As to Paragraph 71, Savinovich is without knowledge as to where Defendants purchased their valet parking tickets that Savinovich used during his work while employed by Defendants and, therefore, denied.

27. As to Paragraph 72, Savinovich is without knowledge as to where Defendants purchased the shirts to wear during his work while employed by Defendants and, therefore, denied. **Savinovich's shirt he was required to wear during his work while employed by Defendants says "Made in Colombia" on the label and the jacket to wear during his work while employed by Defendants says "Made in China" on the label.**

28. As to Paragraph 73, admitted.

29. As to Paragraph 74, admitted that Zuluaga did not hire or fire, set the pay rate, or set the schedules for Savinovich directly however denied that Lopez was not in direct and regular contact with Savinovich's direct supervisor.

30. As to Paragraph 75, denied.

31. As to Paragraph 76, denied.

32. As a valet parker/runner I was responsible to drive vehicles from the entrance of the parking lot located in the back. I was responsible for parking the vehicle, issuing a ticket which we would write the model of the vehicle, color of the vehicle, and my name. One half of the ticket issued I would leave in the vehicle on the dash board and the other half of the ticket that contained the information herein listed I would put on the rack. After I had parked the vehicle and wrote the information on the ticket I would then be responsible for placing the key on the

key rack, to be retrieved at a later time. I was responsible to then return to the entrance to wait for another vehicle to come.

33. I recall driving Ferrari, Lamborghinis, Hondas, Mazda, Nissans, Lexus, Mercedes, Mini-Coopers, Bentley, Escalades, and other such vehicles.

34. I also was responsible for assisting customers/passengers with their groceries and/or luggage (i.e. helping them with their groceries to get in the building and the units, etc.), assisting customers/passengers carrying their groceries and/or luggage up to their unit by riding up and down in the building's elevators and operating said elevators for said customers/passengers. I regularly and daily assisted customers/passengers with their groceries and/or luggage (i.e. helping them with their groceries to get in the building and the units, etc.) to their units and operated the elevators to transport customers/passengers to deliver them and their groceries and/or luggage to their units.

35. There were many customer/passengers from outside the country who would came to visit relatives in the buildings, for example tourists/visitors from Colombia, Argentina, Venezuela, Chile, Canada, and Russia, and I would drive their rental vehicles so that they could be parked and/or returned to them when they were leaving the building. I was also responsible for helping many customer/passengers from outside the country who would came to visit relatives in the buildings, for example tourists/visitors from Colombia, Argentina, Venezuela, Chile, Canada, and Russia, and I would assist them with taking their luggage and/or groceries and/or other shopping purchases from their vehicles to the elevators and/or up to their units by operating the elevators for them. The locations that I worked at had customers/passengers that were regularly travelling through the State of Florida and/or visiting the State of Florida from outside the State of Florida and/or the country.

Javier Antonio Cabrera Savinovich

36. Also, for the first part of my employment with Defendants I would receive payment from customers/passengers by credit card and I would be responsible for using the credit card machine in order to process their payments. I also had to regularly and daily handle cash/money given to me by Defendants' customers/passengers in order to pay for Defendants' valet services.

37. During my employment with Defendants, as a valet parker/runner I was also responsible to assist security when they needed to take a bathroom/cigarette break, attend to a fire alarm, and/or other matters. When I had to assist at the security desk I would be responsible for leaving the valet desk and would assist security (i.e. answer the phone, check in guests, give out packages/parcels that were delivered and arrived from UPS/FED EX/AMAZON/DHL, open the doors for customers/residents, operate the elevators, and other security duties).

38. While assisting security, I was regularly handling products that were coming from outside the state of Florida and/or outside the country such as packages/parcels that were delivered and arrived by UPS/FED EX/AAZON/DHL, etc.

39. I handled, sold, or otherwise worked on goods or materials that have been moved in or produced for commerce such the time-clock, punch cards, valet tickets, pens, violation stickers, key rings, keys, moving the podium, staples, paper clips, markers, key rings, key rack, keys, cash register box, cash, running the credit card machine and the credit cards, umbrellas, raincoats, flashlights, boots, rubber bands, and other office material.

40. The time-clock we used was an "Amano TCX-45." I have researched online using Google and have determined that Amano TCX-45 which is from a company Amano Cincinnati, Inc., located in New Jersey. Daily and constantly, me and Defendants' other employees would handle the time-clock to punch-in and punch-out using same. We would also punched the valet tickets regularly and daily when customers/passengers arrived and left.

JC Javier Antonio Cabrera Savinovich

41. I recall using Sharpie brand highlighters on a daily basis and two or more employees, including, but not limited to, Brandon Gomez, Julio Montero, and Antonio (Last Name Unknown), were also using the Sharpie brand highlighters daily.

42. Also, I recall regularly using Bic pens and the box reflects that these pens were "Made in Mexico" and two or more employees, including, but no limited, Brandon Gomez, Julio Montero, and Antonio (Last Name Unknown), were using these pens on a daily basis to write down the time the vehicle had arrived and the model, color of the vehicle, and the valet parker/runners' names.

43. During the relevant time period, I also handled, sold, or otherwise worked on goods or materials that have been moved in or produced for commerce such as my walkie-talkie; initially we used Motorola walkie-talkies and then when they broke we used another walkie-talkie called Veretex Standard. I have researched online using Google and have determined that Veretex Standard's engineering team is based in Tokyo, Japan.

44. To the best of my recollection, the walkie-talkies were Motorola and Veretex Standard and were used on a daily basis by me and at least one other of Defendants' employees.

45. With regards to the walkie-talkies that I used during the relevant time period that I worked for Defendants, a valet parker/runner was assigned one walkie-talkie and security was assigned the other so that we could be in constant communication, daily, with each other.

46. The other valet parkers/runners handled, sold, or otherwise worked on good or materials that have been moved in or produced for commerce such as my supervisors, Javier (LastName Unknown), Yosimar (Last Name Unknown), Alberto(Last Name Unknown), Abel Ortiz, Henry Cairo, Julio Moran, Brandon Anthony Gomez, Antonio (Last Name Unknown), and Juan Barcos,

Javier Antonio Cabrera Savinovich

by driving Ferrari, Lamborghinis, Hondas, Mazda, Nissans, Lexus, Mercedes, Mini-Coopers, Bentley, Escalades, and other such vehicles, as valet parkers/runners.

47. The other valet parkers/runners such as my supervisors, Javier (LastName Unknown), Yosimar (Last Name Unknown), Alberto(Last Name Unknown), Abel Ortiz, Henry Cairo, Julio Moran, Brandon Anthony Gomez, Antonio (Last Name Unknown), and Juan Barcos, were also responsible to assist security when they needed to take a bathroom/cigarette break, attend to a fire alarm, and/or other matters. My co-workers, like me, were responsible for assisting security (i.e. answer the phone, check in guests, give out packages/parcels that were delivered and arrived from UPS/FED EX/AMAZON/DHL, open the doors for customers/residents, and other security duties). Therefore, the other valet parkers/runners such as my supervisors, Javier (LastName Unknown), Yosimar (Last Name Unknown), Alberto(Last Name Unknown), Abel Ortiz, Henry Cairo, Julio Moran, Brandon Anthony Gomez, Antonio (Last Name Unknown), and Juan Barcos, were regularly handling products that were coming from outside the state of Florida and/or outside the country such as packages/parcels that were delivered and arrived by UPS/FED EX/AAZON/DHL, etc.

48. **Prior to commencing my employment with Defendants, I was required to purchase a shirt and jacket from them and Defendants required me and Defendants' employees to wear them daily; the shirt says "Made in Colombia" on the label and the jacket says "Made in China" on the label. Every employee had to purchase the same shirt and jacket and were required to wear them daily.**

49. I also was responsible to call taxis for customers/passengers who needed to be taken from Defendants' place of business to the airports in Fort Lauderdale and Miami and/or to the Port of

JC Javier Antonio Cabrera Savinovich

Miami. I recall customers/passengers requesting that we call a taxi so that they could be at the airports and/or ports by a specific time so as to catch their planes/boats.

50. Towards the last two years of the relevant time period, I was regularly instructed by my direct supervisor, Abel Ortiz, to use a co-worker's time card to punch in with when my own punch card reflected forty (40) hours in a week on same. Therefore, the time records that Defendants maintained are inaccurate and I dispute their validity.

51. I often would use my co-worker's punch card to keep track of my hours over forty (40) in a week and these, obviously, would not be reflected on my own punch card that reflected my name. When this occurred, my co-worker would be paid for the hours I had worked and punched in using his time card and my co-worker would have to pay me in cash, after receiving payment for the hours I had completed, for the hours I had worked over forty (40) in a week. On one occasion, I recall using a co-worker's punch card, as instructed by my direct supervisor, and when he received payment for the hours I was worked over forty (40) that week he left town and I never received payment for said work. I reported this to my direct supervisor and it fell on deaf ears.

52. During my employment with Defendants I worked as a valet parker/runner at Seacoast Towers (from on or about October 2011 through to and including August 2015) and then at Crystal Beach (from on or about September 2015 through to and including May 2016). My employer was always Defendants.

FURTHER AFFIANT SAYETH NAUGHT.

DATED this 18 day of July, 2016.

_____
AFFIANT
JAVIER ANTONIO CABRERA SAVINOVICH

Page 9 of 10

JC Javier Antonio Cabrera Savinovich

The foregoing Affidavit was sworn to and subscribed before me, on this 18 day of July, 2016, by JAVIER ANTONIO CABRERA SAVINOVICH, who has produced FL DL as identification.

JOSHUA H. SHESKIN
MY COMMISSION # FF 996310
EXPIRES: June 3, 2020
Bonded Thru Budget Notary Services

_____
NOTARY PUBLIC, State of Florida

Page **10** of **10**

JC  Javier Antonio Cabrera Savinovich