UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.  1:16-CV-20027 MGC

FLOR ANDREA RODRIGUEZ ASALDE,
et al.

    Plaintiff,

vs.

FIRST CLASS PARKING SYSTEMS LLC
a/k/a 1ST CLASS VALET SERVICE,
SEBASTIAN LOPEZ,  JORGE ZULUAGA,

    Defendants.
_____/

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANTS' AMENDED MOTION FOR SUMMARY FINAL JUDGMENT**

1

Defendants, FIRST CLASS PARKING SYSTEMS LLC, SEBASTIAN LOPEZ and JORGE ZULUAGA (collectively, "Defendants"), hereby file their Reply to Plaintiff's Opposition [D.E. #43] to Defendants' Amended Motion for Summary Final Judgment [D.E. #35], and state:

## OVERVIEW

There is simply no interstate commerce involved in either Plaintiffs' work or in the business of Plaintiff's employer, Defendant, FIRST CLASS PARKING SYSTEMS, LLC. Therefore, the FLSA does not apply, and the Court should grant Defendants summary final judgment. Even assuming *arguendo* that there was interstate commerce, Plaintiffs have failed to meet their initial burden to show that they performed work for which they were not properly compensated by failing to produce *any* evidence to show the date, the amount and extent of their work. Accordingly, summary judgment should be entered against them. Further, despite Plaintiffs' arguments to the contrary, Defendants, JORGE ZULUGA and SEBASTIAN LOPEZ did not have the requisite degree of "substantial control" over Plaintiffs' work in order to qualify as "employers" under the FLSA.

For these reasons, Defendants respectfully request that the Court grant the instant Motion and enter summary final judgment against Plaintiffs.

## ARGUMENT AND MEMORANDUM OF LAW

### I. No Individual Coverage Because No Interstate Commerce

Plaintiffs erroneously rely upon *Polycarpe v. E & S Landscaping Service, Inc.*, 616 F.3d 1217 (11th Cir. 2010), for the proposition that because Plaintiffs parked customers' vehicles, Plaintiffs were handling "materials" that had once moved in interstate commerce ("the materials are the cars parked/retrieved for customers") [D.E. #43, p.5], and therefore the FLSA applies. However, as the *Polycarpe* Court instructed:

> Therefore, we conclude that for the purposes of the FLSA's handling clause, an item will count as "materials" if it accords with the

2

>definition of **"materials"— tools or other articles necessary for doing or making something — in the context of its use** and if the employer has employees "handling, selling, or otherwise working on" the item for the employer's commercial (not just any) purposes.

*Id*. at 1227 (emphasis added). Plaintiffs' argument fails because the customers' vehicles are finished "goods" (subject to the ultimate consumer exception), not materials.[1] As this Court found in another FLSA case cited by Plaintiffs, "the automobiles at issue in this case are not `materials' for purposes of the FLSA because they are not elements of the goods or goods that are consumed in the employer's business, rather they are the `goods' themselves." *Rodilla, v. TFC-RB, LLC,* 2009 WL 3720892, *13 (S.D.Fla. November 4, 2009). Accordingly, Plaintiffs' reliance upon *Polycarpe* is entirely misplaced.

In furtherance of their argument that parking cars is an interstate activity, Plaintiffs incorrectly rely upon two (2) cases that are easily distinguishable from the case at bar.[2] First, *Exime v. E.W. Ventures, Inc.*, 591 F. Supp. 2d 1364 (S.D. Fla. 2008), is inapposite because the workers in that case cleaned, pressed and delivered clothing and served as storefront personnel, daily used business materials, inclusive of cleaning chemicals, <u>vehicles owned and used by the establishment</u>, pressing machines, cleaning machines, boilers and dryers, all of which had been purchased by the

---

[1] If Plaintiffs' reasoning was correct, the vehicles to be parked would initially be "goods" (subject to the ultimate consumer exception), but then be converted into "materials" when the valet parked the vehicle, and converted back into "goods" when the valet retrieved the vehicle for the owner. Plaintiffs' tortured interpretation of "materials" goes too far.

[2] Plaintiffs also unfortunately rely upon *Saucedo v. Phoenix Auto Sales, Inc.*, 08-cv-21156-Altonaga/Brown (S.D. Fla. January 5, 2009), which is no longer good law as its findings are based upon its erroneous definition of "materials" under the FLSA which should have been corrected to comport with *Polycarpe*. However, before the *Saucedo* Court was able to correct its decision, a suggestion of bankruptcy was filed in the *Saucedo* case. (A copy of the docket in the *Saucedo* case is attached hereto as **Exhibit "1."**) Accordingly, the holding by the *Saucedo* Court that cars are "materials" has been overruled *sub silentio* by *Polycarpe*. *Saucedo* is not only inapposite, it is an outdated and erroneous decision that is no longer good law. Plaintiffs also fail to mention that the *Rodilla* court expressly disagreed with the *Saucedo* Court's determination that cars were "materials" even before the issuance of the *Polycarpe* decision by the Eleventh Circuit. 2009 WL 3720892 at *13.

defendant.  Second, *Rodilla, v. TFC-RB, LLC,* 2009 WL 3720892 (S.D.Fla. November 4, 2009), is inapposite because it involved car porter plaintiffs who drove, serviced and cleaned the cars so that they could again be rented to patrons of the car rental agencies. *Id*. at *2.  Further, as the *Rodilla* Court stated, "It is undisputed that the rental car agencies regularly rented cars to persons who arrived at the Ft. Lauderdale Airport from out of state; and cars were regularly returned to the rental car agencies by persons who were boarding airplanes to travel out of state." *Id*. at 3.  As such, the cars were being used for or in furtherance of interstate commerce.[3]

In response to Plaintiffs' argument that some of the cars they parked were manufactured outside of the United States and therefore must have moved through interstate commerce in order to arrive in Florida, Defendants respectfully submit that Plaintiffs have missed the point entirely. Where the vehicles originated from is irrelevant if the vehicles had already been purchased by their ultimate users because, "Ultimate consumers of products are not `engaged in commerce' just because they purchase products that have moved in interstate commerce." *Jimenez*, 2008 WL 4279618 at *8.  *See also Thorne,* 448 F.3d at 1267.

Plaintiffs have also missed the point entirely as to the walkie-talkies,[4] pens, uniforms, valet tickets[5] and other items that they claim changed the intrastate nature of their work and First Class'

---

[3] Plaintiffs also attempt to rely upon 29 CFR § 776.11 as a result of *Rodilla*,  However, in *Rodriguez v. Gold Star, Inc.*, *et al*., 15-cv-20902-AOR (S.D.Fla. March 2, 2016), *rehearing den.*, March 31, 2016, the Court expressly found, "26 C F.R. § 776.1 l `Employees doing work related to instrumentalities of commerce' **does not cover valet parking**. The employees described therein are those `performing the work involved in the **maintenance, repair, or improvement of existing instrumentalities of commerce.'** 26 C.F.R. § 776.11." [D.E. #29-1, p.8, n.3] (emphasis added).

[4] As First Class stated in its Response to Plaintiffs' Request for Production: "Defendants do not own any `radios and/or walkie-talkies,' the units are leased and only used at the Miami Beach Convention Center when there is an event." [*See* **Exhibit "2"** hereto, ¶49].

[5] On July 27, 2016, Plaintiffs filed a Supplemental Affidavit of Savinovich [D.E. #47-1], nine (9) days after Plaintiffs' deadline to respond to the instant Motion.  As such, the Court should completely disregard it.  Defendants have filed a separate motion to strike same.  Moreover, the Affidavit failed to properly authenticate the ticket and failed to provide any personal knowledge as

4

business. First Class was the ultimate consumer of these goods. Just as there was no interstate commerce for the plaintiff in *Thorne*, 448 F.3d at 1267, who performed mold and water damage restoration using locally purchased tools that had been manufactured out of state, there is no interstate commerce or FLSA coverage here. This result also occurred in *Jumenez*, where the plaintiff argued that there was FLSA coverage because the soap or sponges he used to wash the cars had been manufactured out of state. 2008 WL 4279618, *8. *See also Dunlop v. Industrial America Corporation,* 516 F.2d 498, 499 (5th Cir.1975).[6]

The same result should apply with regard to First Class which locally purchased materials (that may have been produced out of state) for use as the ultimate consumer. *See also Navarro v. Broney Automotive Repairs, Inc.*, 314 Fed.Appx. 179 (11th Cir. 2008)(where worker picked up auto parts that were purchased locally but had been manufactured outside of Florida, and then installed the parts on domestic and foreign cars, worker was not engaged in interstate commerce; "The later transport and installation of the parts into the vehicles of [the employer's] customers by [employee] was purely intrastate activity and not covered under the Act."(citation and quotations omitted); *Navarro v. Broney Automotive Repairs, Inc.*, 533 F.Supp.2d 1223 (S.D. Fla. 2008), aff'd. *per curiam*, 314 Fed.Appx. 179 (11th Cir. 2008).[7] *Cf. Gregory v. Quality Removal, Inc.*, 2014 WL

---

to where the ticket was printed. This is yet another reason for the Court to disregard it. Nevertheless, First Class has already established that it *purchased its valet tickets and uniforms within Florida* [D.E. #29-6, ¶¶10-11], and was the ultimate consumer of same. These facts remain uncontroverted. (*See* also copy of deposition of Jorge Zuluaga, attached hereto as **Exhibit "3,"** at p.23, ln.15 – p.24, ln.2.)

[6] *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc)(decisions of the former Fifth Circuit handed down prior to October 1, 1981 are binding precedent).

[7] Plaintiffs' counsel was counsel of record in *Navarro* at the trial court and appellate level. Therefore, Defendants believe that Plaintiffs' entire argument seeking to establish FLSA coverage because items (pens, walkie talkies, valet tickets, etc.) were manufactured out of state, despite having been purchased locally, is disingenuous at best.

5494448 (S.D.Fla. October 30, 2014)(cadaver transport service was "engaged in commerce" when it dropped off and picked up bodies at the airport for interstate travel).

In a last-ditch effort to avoid summary judgment, Plaintiffs attempt to create an issue of fact where none exists by stating, "The locations that I worked at, such as the Miami Beach Convention Center and the Fillmore Miami Beach had customers that were regularly traveling through the State of Florida and/or visiting the State of Florida from outside the State of Florida and/or the country." [D.E. #43, p.8].[8] This argument was squarely rejected by the Court in *Rodriguez* when it stated: "And the fact that the drivers of the cars that were being parked were attending events at the Convention Center does not change this result. **It was the cars, not their drivers, that were being parked.**" [D.E. 29-1, pp.8-9] (emphasis added). *See also* the reasoning of the Fifth Circuit Court of Appeal in *Sobrino v. Medical Center Visitor's Lodge, Inc.*, 474 F.3d 828, 829-30 (5th Cir. 2007)(where the Court found that driving out-of-state motel patrons to local places did not qualify for FLSA coverage because there was no interstate aspect).

Savinovich similarly speculates that, "While assisting security, I was regularly handling products that were coming from outside the state of Florida and/or outside the country such as packages/parcels that were delivered and arrived by UPS/FED EX/AAZON/DHL, etc." [D.E. #43, p,. 10; D.E. #43-1, ¶37]. Once again, Savinovich fails to even state the basis of this belief (*e.g.*, that he had conversations with patrons, etc.) that the products or packages were coming from outside of Florida or outside the country.[9] Therefore, he has failed to meet his burden to show interstate commerce. As such, the Savinovich Affidavit is nothing more than inadmissible and conclusory speculation and conjecture, and should be rejected by the Court as such. *See Cordoba*, 419 F.3d at

---

[8] Plaintiffs failed to provide a record citation for this allegation. However, the lack of personal knowledge also renders these portions of the Savinovich Affidavit [D.E. #44-1, ¶35] and the Asalde Affidavit [D.E. #44-2, ¶49] inadmissible as nothing more than conclusory speculation and conjecture. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

[9] It is just as likely that the packages were coming from inside Florida.

6

1181. *See also Thorne*, 448 F.3d at 1267 (simply handling credit card payments is not sufficient to confer FLSA coverage).[10]

For the reasons stated above and in Defendants' Amended Motion for Summary Judgment [D.E. #35, pp.3-10], as a matter of law, there is no individual coverage for Plaintiff under the FLSA.

II. **No Enterprise Coverage Because No Interstate Commerce**

Just as Plaintiffs do not qualify for individual coverage because their work "did not sufficiently affect commerce because the plaintiff [parked] vehicles using equipment purchased wholly within Florida and that the plaintiff did not drive the vehicles he [parked] except … within the parking [lot]," *Jimenez*, 2008 WL 4279618 at *8, similarly, First Class' other employees were not engaged in commerce and did not have "employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person". 29 U.S.C. § 203(s)(1)(A). Indeed, the record is devoid of any evidence to the contrary. Accordingly, Plaintiffs cannot establish enterprise coverage as to First Class. *See Rodriguez v. Gold Star, Inc.*, *et al.*, 15-cv-20902-AOR (S.D.Fla. March 2, 2016), *rehearing den.*, March 31, 2016 (finding no individual or enterprise coverage as to First Class).

For the reasons stated above and in Defendants' Amended Motion for Summary Judgment [D.E. #35, pp.10-12], as a matter of law, no enterprise coverage exists as to First Class. Accordingly, the Court should grant summary judgment to Defendants.

III. **As a Matter of Law, Plaintiffs Have Not Carried Their Initial Burden to Show They Worked "Off The Clock" and Without Overtime Compensation**

To meet their initial burden, Plaintiffs must show that they worked hours for which they were not compensated. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. at 688. Plaintiffs have failed to adduce any record evidence to show they suffered actual damages, as is required by

---

[10] Savinovich testified that he used a credit card machine only at Seacoast in 2011 and "then never again." [D.E. #29-3, p.37, ln.24 – p.38, ln.9.] This is immaterial because it is outside of the three (3) year FLSA limitations period.

7

*Anderson,* and therefore Plaintiffs have failed to meet the *Anderson* burden. *Anderson*, 328 U.S. at 688.

As a result, Plaintiffs' FLSA claims fail as a matter of law because they have not produced sufficient record evidence to show they "in fact performed work for which [they were] improperly compensated" and "the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 678-88.  *See also Carmody v. Kansas City Board of Police Commissioners*, 713 F.3d 401 (8th Cir. 2013).  Furthermore, Plaintiffs admit that they were paid for all hours worked and are only seeking the half-time premium wage.

During their depositions, none of the three (3) Plaintiffs provided any testimony or records of *any* specific dates worked, specific hours worked or money owed.  In their Amended Statement of Material Facts [D.E. #47, ¶¶3, 14, 30, 48], Plaintiffs still do not point to *any* specific dates worked, specific hours worked or money owed even though Defendants produced Plaintiffs' time/pay records.  *See* Exhibit "2."  Accordingly, Plaintiffs have failed to meet their initial burden.

Significantly, each of the Plaintiffs admitted that *there was never a shift that they worked for First Class for which they were not paid*. [D.E. #29-3, p.59, lns.12-14; D.E. #29-2, p.12, ln.19-21; p.35, lns.2-11; p.40, lns.12-16; D.E. #29-4, p.28, lns.7-12; p.30, lns.18-22].  This admission leads to the inescapable conclusion that Plaintiffs were paid wages for all hours worked.  As such, and as a matter of law, Plaintiffs have not met their initial burden and summary judgment should be granted to Defendants.

Although Plaintiffs repeatedly allege that Defendants failed to keep adequate time records (D.E. #43, pp.15-17), this allegation is untrue.  Defendants produced 344 pages of documents in response to Plaintiffs' discovery demands which included time records and paystubs for each of the Plaintiffs.  *See* First Class' three (3) Responses to Plaintiffs' First Request for Production, dated

May 24, 2016, a copy of which is attached hereto as Exhibit "2."[11]  Moreover, for the first time in this case, Asalde now alleges that First Class failed to maintain time records until 2015. [D.E. #47, ¶¶48, 56, 57 & 60].  However, Asalde admitted at her deposition that she signed in and signed out every time she worked [D.E. #29-4, p.30, lns.6-11], that she was paid for every hour she worked [D.E. #29-4, p.30, lns.18-22], and that she was paid at the end of the event so she would know if she was not paid for every hour she worked [D.E. #29-4, p.30, lns.15-18].  The Court should reject Asalde's new allegation and her Affidavit.  *See Bryant v. U.S. Steel Corp.*, 428 Fed.Appx. 895, 897 (11th Cir. 2011).

Rather than addressing his own failure to meet his initial burden, Savinovich attempts to shift the burden to Defendants by claiming that Defendants failed to comply with their record keeping requirements because he was supposedly instructed by his supervisor "to use a co-worker's time card to punch in with when my own punch card reflected forty (40) hours in a week on same." [D.E. #44-1, ¶50-51].  This Affidavit is a sham affidavit and should be rejected by the Court as such because it directly contradicts Savinovich's sworn deposition testimony that he was paid for every hour he worked, but not the overtime premium (half-time). [D.E. #29-3, p.59, lns.12-14, 15-17, 21-24].  *See Bryant v. U.S. Steel Corp.*, 428 Fed.Appx. 895, 897 (11th Cir. 2011).[12]

Another example of this conduct is when Savinovich states, for the first time, that "the clock system did not always work, and when it did not work it would take several days until it would be fixed. Thus, any clock-in records are disputed as to their accuracy and validity." [D.E. #47, ¶78]. However, Savinovich admitted at his deposition that *he was paid for all of the hours he worked*.

---

[11] Plaintiffs have not filed these records with the Court because they contain information about First Class' other employees who are not parties to this action.  However, First Class will do so upon request.

[12] Savinovich also claims that was not paid the Federal Minimum Wage rate [D.E. #1, p.6]. However, his claims fails because he admitted he was paid for every hour he worked [D.E. #29-3, p.59, lns.12-14, 15-17, 21-24], and that his only claim was for the half-time premium for the overtime hours he claimed he worked.

9

[D.E. #29-3, p.59, lns.7-25]. The Court should reject this sham "evidence." *See Bryant v. U.S. Steel Corp.*, 428 Fed.Appx. 895, 897 (11th Cir. 2011).

For the reasons stated above and in Defendants' Amended Motion for Summary Judgment [D.E. #35, pp.12-18], as a matter of law, Plaintiffs have not carried their initial burden to prove they worked "off the clock" and without overtime compensation. Therefore, summary judgment should be granted to Defendants.

### IV. <u>Defendants, Jorge Zuluga and Sebastian Lopez Were Not "Employers"</u>

Contrary to Plaintiff's argument [D.E. #51, p.9], there is no record evidence that Zuluga and Lopez were "employers" within the meaning of the FLSA, 29 U.S.C. § 207(a)(1), and therefore they cannot be held individually liable.

Plaintiffs confuse the relevant standard by arguing that Zuluaga and Lopez were "involved in the overseeing of the business and ensuring it is operating correctly" [D.E. #34, p.19] and had "the most authority over the financial business decisions" [*Id.*, p.20] of the company. The Supreme Court has held that "managerial responsibilities" and "**substantial control** of the terms and conditions of the [employer's] work" create statutory employer status under the FLSA. *Falk v. Brennan,* 414 U.S. 190, 195 (1973)(emphasis added). However, the record shows that neither Zuluaga nor Lopez exercised **"substantial control"** control over any of the Plaintiffs' work nor the terms and conditions of any of the Plaintiffs' work. [D.E. #29-5, ¶5; D.E. #29-6, ¶5]. As officers of First Class, Lopez and Zuluaga did not: (i) hire or fire any of the Plaintiffs; (ii) set the schedule for any of the Plaintiffs; or (iii) supervise any of the Plaintiffs. [D.E. #29-5, ¶4; D.E. #29-6, ¶4]. Moreover, neither Lopez nor Zuluaga had an active role in the day-to-day valet parking operations at the various parking lots. [D.E. #29-5, ¶6; D.E. #29-6, ¶6]. As such, neither Zuluaga nor Lopez

had "**substantial control** of the terms and conditions of the [employer's] work" to create statutory employer status. *Falk v. Brennan,* 414 U.S. 190, 195 (1973)(emphasis added).[13]

Like the president in *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986), Zuluga and Lopez were merely stockholders and officers of a corporation which owned a business. Neither Zuluga nor Lopez took such an active role in the day-to-day operations of First Class as the corporate officers in *Donovan v. Agnew*, 712 F.2d 1509 (1st Cir. 1983), as Plaintiffs suggest. The record evidence establishes that neither Zuluga nor Lopez exercised "substantial control" over Plaintiff's work in order to create "employer" status under the FLSA. *Falk,* 414 U.S. at 195.

For the reasons stated above and in Defendants' Amended Motion for Summary Judgment [D.E. #35, pp.19-21], as a matter of law, summary judgment should be granted to Defendants.[14]

WHEREFORE, Defendants respectfully request that the Court grant the instant Motion in its entirety, and award summary judgment in favor of Defendants and against Plaintiff, and grant such other and further relief as the Court deems just and proper.

Respectfully Submitted, July 28, 2016

/s/ Lowell J. Kuvin
Lowell J. Kuvin
Fla. Bar No.: 53072
Sundeep K. Mullick
Fla. Bar No.: 18175
lowell@kuvinlaw.com
sunny@kuvinlaw.com
Law Office of Lowell J. Kuvin
17 East Flagler St. Suite 223

---

[13] Neither Zuluaga nor Lopez would determine the work schedule (as Plaintiffs misleading argue [D.E. #43, p.19] and "cherry-pick" from Zuluaga's deposition, but then fail to provide the Court with the preceding page of his deposition). Actually, Zuluaga testified that the on-site managers set the work schedules for the valet parkers – not he or Lopez. (*See* copy of deposition of Jorge Zuluaga, attached hereto as Exhibit "3," at p.21, ln.9 – p.22, ln.11.) Similarly, the allegation that Conde was hired by Zuluaga or Lopez is false. [D.E. #51, pp.20-21]. Conde testified that he did not know who hired him. [D.E. #29-2, p.20, ln.15 – p.21, ln.4].

[14] Plaintiffs' request to reopen discovery is not only unsupported by any case law, it is also nonsensical. Discovery has concluded.

                     Miami, Florida 33131
                     Tel: 305.358.6800
                     Fax: 305.358.6808
                     *Attorney for Defendants*

## **CERTIFICATE OF SERVICE**

   I hereby certify that on July 28, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all counsel of record in this action.

Rivkah Jaff, Esq.
J.H. Zidell, Esq.
J.H. Zidell, P.A.
Attorney For Plaintiff
300 71st Street, Suite 605
Miami Beach, Florida 33141
Tel: (305) 865-6766
Fax: (305) 865-7167
Email: ZABOGADO@AOL.COM; Rivkah.Jaff@gmail.com

                     /s/ Lowell J. Kuvin
                     Lowell J. Kuvin