UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-20027-Civ-COOKE/TORRES

FLOR ANDREA RODRIGUEZ ASALDE, et al.,

    Plaintiff,

vs.

FIRST CLASS PARKING SYSTEMS LLC
a/k/a 1ST CLASS VALET SERVICE,
SEBASTIAN LOPEZ, JORGE ZULUAGA,

    Defendants.
_____/

## ORDER ON DEFENDANTS' AMENDED MOTION
## FOR SUMMARY FINAL JUDGMENT

    This is an action under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201, *et seq.*, to recover unpaid wages. I have jurisdiction under 28 U.S.C. § 1331.

    Pending is Defendants' Amended Motion for Summary Final Judgment. (ECF No. 35). For the reasons that follow, I **GRANT** the motion.

### BACKGROUND

    Plaintiffs worked as valets for Defendant First Class Parking Systems LLC ("First Class"), a/k/a 1st Class Valet Service, during various periods between 2011 and 2015.[1] First Class is a valet parking company.

    Plaintiff Flor Andrea Rodriguez Asalde worked for First Class as a valet from January 9, 2013 through December 1, 2015. During that period, she worked an average of seventy hours per week, earning an average of $8.25 per hour. She did not receive extra half-time overtime pay when she worked more than forty hours per week.

    Plaintiff John Conde worked for First Class as a valet from March 7, 2012 through September 1, 2014. During that period, he worked an average of forty-eight hours per week,

---

[1] The parties disagree about the exact dates of each Plaintiff's employment. For the purpose of resolving this motion, I accept the Plaintiffs' dates as accurate.

earning an average of $8.00 per hour. He did not receive extra half-time overtime pay when he worked more than forty hours per week.

Plaintiff Javier Antonio Cabrera Savinovich has worked for First Class as a valet since October 11, 2011. From the day he started through October 11, 2014, he worked an average of fifty-eight hours per week, earning an average of $6.00 per hour. Since October 12, 2014, Savinovich has averaged the same number of hours earning $7.00 per hour. He does not receive extra half-time overtime pay when he works more than forty hours per week.

Plaintiffs seek to recover double damages and reasonable attorneys for unpaid overtime wages and, in Savinovich's case, unpaid minimum wages.[2]

## STANDARD OF REVIEW

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). Thus, the entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id*.

Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). Thus, the nonmoving party "may not rest upon the

---

[2] The federal minimum wage at all times relevant to this dispute was $7.25 per hour. 29 U.S.C. 206(a).

mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted).

"A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon*, 196 F.3d at 1358. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Abbes v. Embraer Servs., Inc.*, 195 F. App'x 898, 899-900 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)).

When deciding whether summary judgment is appropriate, "the evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party." *Bush v. Houston County Commission*, 414 F. App'x 264, 266 (11th Cir. 2011).

### ANALYSIS

The FLSA's wage provisions apply under two circumstances: (1) where an employee is engaged in commerce or the production of goods for commerce (i.e., "individual coverage") or (2) where an employee works for an "enterprise" engaged in commerce or in the production of goods for commerce (i.e., "enterprise coverage"). 29 U.S.C §§ 206(a), 207(a); *see Ares v. Manuel Diaz Farms, Inc.*, 318 F.3d 1054, 1056 (11th Cir. 2003). "The burden of proof lies on employees to establish that they were engaged in interstate commerce, or in the production of goods, and that such production was for interstate commerce." *Kitchings v. Florida United Methodist*, 393 F.Supp.2d 1282, 1292 n.25 (M.D. Fla. 2005) (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 121 (1946)).

Because valet parking is a service, the "production of goods for commerce" option is not applicable in this case. The FLSA coverage analysis is therefore limited to the "engaged in commerce" option.

"[F]or an employee to be 'engaged in commerce' under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce by (1) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (2) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone,

telegraph, mails, or travel. *See Thorne v. All Restoration Services, Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006).[3]

Enterprise coverage exists where the enterprise as a whole is "engaged in commerce." *Diaz v. Jaguar Restaurant Group, LLC*, 649 F. Supp. 2d 1343, 1346 (S.D. Fla. 2009). The FLSA defines an enterprise as an entity that has two or more employees who are directly engaged in commerce or that has employees handling goods or materials that have been moved in commerce. The statute specifies that an enterprise: (1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person;" and (2) has an "annual gross volume of sales made or business done [that] is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)." 29 U.S.C. § 203(s)(1)(A).

Plaintiffs' argument for individual and enterprise coverage is, in essence, that they and First Class provided services involving automobiles, which not only are products of interstate commerce but also are instrumentalities of interstate commerce. (ECF No. 43).

Essentially, Plaintiffs are asking me to rule, as a matter of law, that any employee who parks cars is engaged in interstate commerce. The test, however, is not as loose as Plaintiffs propose. To carry the burden of showing that they, as valets, were engaged in interstate commerce, they would need to show that their "work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429 (1955).

To buttress their position, Plaintiffs point out that none of the cars they parked were made in Florida, as most traced back to Japan or Germany. (ECF. No. 43 at 8). But the parking of cars in Florida is an isolated, local activity. There is no evidence that the parking of cars "was directly and vitally related to the functioning of an instrumentality or facility of

---

[3] When determining individual coverage, the character of the employee's activities is determinative, not the nature of the employer's business. *Overstreet v. N. Shore Corp.*, 318 U.S. 494, 498 (1943). The test, therefore, is "whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Id.* The application of this test to a FLSA claim is essentially a "line drawing exercise." *Alonso v. Garcia*, 147 Fed.Appx. 815, 816 (11th Cir.2005).

interstate commerce." *Mitchell*, 349 U.S. at 429.  The fact that the cars often came to Florida from outside of Florida does not change that conclusion. Where the vehicles originated is irrelevant if the vehicles had already been purchased by their ultimate users, because "[u]ltimate consumers of products are not 'engaged in commerce' just because they purchase products that have moved in interstate commerce." *Jimenez v. Southern Parking, Inc.*, 2008 WL 4279618, at *8 (Sept. 16, 2008 S.D. Fla).

Plaintiffs rely on *Polycarpe v. E & S Landscaping Service, Inc.*, 616 F.3d 1217 (11th Cir. 2010), to argue that because Plaintiffs parked customers' vehicles, Plaintiffs were handling "materials" that had once moved in interstate commerce ("the materials are the cars parked/retrieved for customers"). (ECF No. 4 at 5). The *Polycarpe* court specified, however, "that for the purposes of the FLSA's handling clause, an item will count as 'materials' [only] if it accords with the definition of 'materials' – tools or other articles necessary for doing or making something." *Polycarpe*, 616 F.3d at 1227. Thus, "automobiles . . . are not 'materials' for purposes of the FLSA because they are not elements of the goods or goods that are consumed in the employer's business, rather they are the 'goods' themselves." *Rodilla, v. TFC-RB, LLC*, 2009 WL 3720892, at *13 (S.D. Fla. Nov. 4, 2009). Plaintiffs' reliance upon *Polycarpe* is therefore misplaced.[4]

Accordingly, Plaintiffs were not engaged in interstate commerce. Likewise, First Class did not have other "employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." 29 U.S.C. § 203(s)(1)(A). The record is devoid of any evidence to the contrary.

In short, there is no interstate commerce or FLSA coverage here.

## CONCLUSION

It is, therefore, **ORDERED** and **ADJUDGED** that Defendants' Amended Motion for Summary Final Judgment (ECF No. 35) is **GRANTED**.

The Clerk is directed to **CLOSE** this matter.  All pending motions, if any, are **DENIED** *as moot*.

---

[4] The fact that Plaintiffs handled walkie-talkies, pens, uniforms, valet tickets and other items that originated out of state does not change the intrastate nature of their work. First Class was the ultimate consumer of those goods.

**DONE** and **ORDERED** in chambers at Miami, Florida, this 29th day of September 2016.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of Record*