Case 1:16-cv-20027-MGC   Document 74   Entered on FLSD Docket 10/16/2018   Page 1 of 20
Case: 16-16814   Date Filed: 10/15/2018   Page: 1 of 3

FILED BY HH
Oct 15, 2018
STEVEN M. LARIMORE
CLERK U.S. DISTRICT CT.
S.D. OF FLA. MIAMI

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

October 15, 2018

Steven M. Larimore
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 16-16814-FF
Case Style: Flor Andrea Asalde, et al v. First Class Parking Systems LL, et al
District Court Docket No: 1:16-cv-20027-MGC

The enclosed judgment is hereby issued as the mandate of this court.

Enclosed is the Bill of Costs.

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Brenda H. McConnell
Phone #: (404) 335-6209

Enclosure(s)

MDT-1 Letter Issuing Mandate

# UNITED STATES COURT OF APPEALS
## For the Eleventh Circuit

_____

No. 16-16814

_____

District Court Docket No.
1:16-cv-20027-MGC

FLOR ANDREA RODRIGUEZ ASALDE,
JOHN CONDE,
JAVIER ANTONIO CABRERA SAVINOVICH,

                Plaintiffs - Appellants,

versus

FIRST CLASS PARKING SYSTEMS LLC,
a.k.a. 1st Class Valet Service,
SEBASTIAN LOPEZ,
JORGE ZULUAGA,

                Defendants - Appellees.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: August 03, 2018
For the Court: DAVID J. SMITH, Clerk of Court
By: Jeff R. Patch

ISSUED AS MANDATE: OCTOBER 15, 2018

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16814
_____

D.C. Docket No. 1:16-cv-20027-MGC

FLOR ANDREA RODRIGUEZ ASALDE, JOHN CONDE,
JAVIER ANTONIO CABRERA SAVINOVICH, and all others
similarly situated under 29 U.S.C. § 216(b),

                                                                    Plaintiffs - Appellants,

versus

FIRST CLASS PARKING SYSTEMS LLC, a.k.a. 1ST CLASS
VALET SERVICE, SEBASTIAN LOPEZ, JORGE ZULUAGA,

                                                                     Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 3, 2018)

Before JORDAN and JILL PRYOR, Circuit Judges.[1]

JORDAN, Circuit Judge:

We withdraw our previous opinion, reported at 894 F.3d 1248 (11th Cir. 2018), and issue this opinion in its place.

Flor Andrea Rodriguez Asalde and others worked as valets for First Class Parking Systems LLC in Miami-Dade County, Florida. They brought claims against FCPS and its owners (whom we refer to collectively as FCPS) under the minimum-wage and overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. The district court granted summary judgment in favor of FCPS, concluding that there was no "enterprise" coverage under the FLSA.

Following a review of the record, and with the benefit of oral argument, we conclude that FCPS was not entitled to summary judgment on the issue of "enterprise" coverage. Based on the evidence, a jury could find that the valet tickets used by the plaintiffs in their work for FCPS constituted "materials" under the FLSA's "handling clause," thereby providing "enterprise" coverage. *See* 29 U.S.C. § 203(s)(1)(A)(i).

---

[1] This opinion is being issued by a quorum pursuant to 28 U.S.C. § 46(d) due to the retirement of District Judge William S. Duffey, Jr., on July 1, 2018. *See, e.g., United States v. Maragh*, 189 F.3d 1315, 1315 n.* (11th Cir. 1999) (supplemental opinion on rehearing issued by a quorum of two judges under § 46(d) following the retirement of the third judge).

2

# I

The FLSA covers certain employment scenarios. *See, e.g.,* 29 U.S.C. § 203(s). The plaintiffs here asserted in part that their employment by FCPS as valets was covered by the "materials" prong of the "handling clause" under the "enterprise" coverage provision in the Act. *See Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1220–21 (11th Cir. 2010). *Cf. Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (addressing "individual" coverage rather than "enterprise" coverage). The "handling clause" provides that an entity is subject to "enterprise" coverage under the FLSA if it "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for [interstate or international] commerce by any person." 29 U.S.C. § 203(s)(1)(A)(i). *See also* § 203(b) (defining "commerce"). The entity must also have an "annual gross volume of sales made or business done [of] not less than $500,000," § 203(s)(1)(A)(ii), but that requirement is not at issue on appeal because FCPS stipulated that it earned at least $500,000 in the years at issue. *See* D.E. 44-4, Deposition of Sebastian Lopez at 11.

When it moved for summary judgment, FCPS argued in part that the plaintiffs could not show that any employees handled any qualifying "goods or materials." The district court agreed and granted summary judgment in favor of FCPS on this basis alone. The court concluded that the cars parked by the

3

plaintiffs were not "materials" under the FLSA.  It also ruled that "the fact that [the plaintiffs] handled walkie-talkies, pens, uniforms, valet tickets and other items that originated out of state" did not change the "instrastate nature of their work" because "[FCPS] was the ultimate consumer of those goods." *Rodriguez Asalde v. First Class Parking Sys. LLC*, 2016 WL 5464599, at *2–3 & n.4 (S.D. Fla. Sept. 29, 2016).

## II

We review the district court's summary judgment order de novo, and view the evidence (and inferences) in the light most favorable to the plaintiffs, who were the non-moving parties.  *See Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 94 (1994); *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010).  We hold that the evidence presented by the plaintiffs permits a jury to find that the valet tickets they used while working for FCPS were "materials" within the meaning of § 203(s)(1)(A)(i).

## III

"Goods" and "materials" are distinct (i.e., not overlapping) categories; an object may be a "good" in certain contexts and a "material" in others.  *See Polycarpe*, 616 F.3d at 1222, 1225–27.  The term "goods" is defined broadly in the Act.  *See id.* at 1222 (quoting 29 U.S.C. § 203(i)).  The term "materials" is not defined at all.  *See Rodriguez v. Gold Star, Inc.*, 858 F.3d 1368, 1370 (11th Cir.

4

2017) (decided after the district court's ruling in this case); *Polycarpe*, 616 F.3d at 1222.[2]

In *Polycarpe*, we concluded that "materials" are "tools or other articles necessary for doing or making something," 616 F.3d at 1224, but added a cautionary footnote: "We do not rule out today that additional meanings of 'materials' might also exist that also preserve the unchanged 'goods' definition and the important ultimate-consumer exception. But no party has drawn our attention to such a definition of 'materials' in this case." *Id.* at 1224 n.4.

We set out the following test for determining whether an item constitutes a "material" under the FLSA:

> First, whether an item counts as "materials" depends on whether the item is serving as a material in context. . . . [T]o count as "materials," an item must [be a] tool[ ] or other article[ ] necessary for doing or making something. . . .
>
> Second, for an item to count as "materials" it must have a significant connection with the employer's commercial activity; the business may not just somehow internally and incidentally consume the item.

*Id*. at 1226. We also provided multiple examples to explain what this test means in practice.

---

[2] "Goods" (unlike "materials") are subject to an "ultimate consumer exception." If employees "handl[e], sell[ ], or otherwise work" on goods "after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof," then such handling, selling, or working will not serve as a predicate for "enterprise" coverage. *See* § 203(i); *Polycarpe*, 616 F.3d at 1222.

5

First, following the lead of the Senate Report for certain 1974 amendments to the FLSA, we discussed the soap used by a laundry. *See id*. at 1224–25. We noted that if a laundry uses soap to clean clothes handed over by a customer, then it uses the soap as a "material" (a tool or other article necessary for doing or making something) to clean those clothes. *See id*. at 1225. "One could easily consider the soap in this example as an 'article[ ] necessary for doing something,' for instance, washing clothes." *Id.* We explained that "where a business provides a service using an item as part of its 'commercial operations,' Congress intended for those kinds of items to be viewed as 'materials.'" *Id*.

Second, we looked to a Department of Labor opinion letter. That letter opined that coffee served by a fast-food retailer, as well as the cleaning supplies and equipment that it used, were "materials" for the purpose of this test. *See id*. "[W]e imagine that, where a restaurant uses interstate cooking equipment as an article to perform its commercial activity of serving food, the restaurant is engaged with 'materials' that will subject the business to FLSA coverage." *Id.*

Third, we considered the example of china dinner plates. *See id*. at 1226. We said that "[d]epending on how they are used, china dinner plates . . . could count as either 'goods' or 'materials.' Where a catering business uses the china plates at a client's banquet, the plates count as part of the 'materials' necessary for serving a catered meal." *Id*. But where "an accounting firm . . . uses the same

6

china plates as objects of decoration mounted on its lobby wall, the china plates cannot count as 'materials' because the plates have no significant connection to the business['] accounting work." *Id*.  Instead, "[t]he china plates in this example seem likely to count as 'goods' that are subject to the ultimate-consumer exception because the accounting firm is the items' ultimate consumer." *Id*. at 1226 n.9.

Applying this test, and considering the examples we provided, we held in *Polycarpe* that the district court on remand would have to determine whether the following items could be found to be "materials" under the FLSA: (1) "shutters containing blades that were evidenced to have been made in Col[o]mbia," sold by the employer and installed by its employees, *id*. at 1227; (2) "burglar alarms with wires, key pads, and other components manufactured out of state," sold by the employer and installed by its employees, *id*.; (3) "paint, tape, and coarse drywall screws" with which employees made "home repairs" for customers, *id*.; and (4) "lawn mowers, edger blades, trucks, pencils, and gasoline" with which employees performed "landscaping tasks" for customers, *id*. at 1228.

Our recent decision in *Gold Star*, 858 F.3d at 1368—issued after the district court issued its summary judgment order—is also informative on the "materials" front.  In that case, as here, employees of a valet parking company sued under the FLSA.  They claimed that the cars they parked were "materials."  Applying our *Polycarpe* test, we held that they were not.

7

In so holding, we further elaborated on the definition of "materials." We favorably cited the decision of the district court on remand in *Polycarpe*, which had ruled that "trucks used by the employees in a landscaping business were 'materials.'" *Id*. at 1370–71.  We did the same with another district court decision concluding that "the flashlight, uniform, and cellphone used by an employee of a property rental business" could be "materials.'" *Id*.

Ultimately, we reasoned in *Gold Star* that cars parked by valets are not "materials" because they are an item *on which* a service is performed rather than the *means* of performing the service.  *See id*. at 1371.  Returning to our "example of a commercial laundry, with the soap employed to wash the clothing constituting the 'materials,'" we reasoned that

> [t]he cars that Rodriguez parks are more akin to the clothing than the soap in this example. Like the dirty clothing brought to the commercial laundry to be washed, the cars are handed to the valet parkers to be parked. In both cases, the employees perform a service for the customer with respect to the items left in their care. The employees do something to the cars here, like the employees of the commercial laundry do something to the clothes. In both cases, the customers' goods are returned to the customer after the service is performed on them. Neither the cars here nor the clothes in the laundry are tools necessary to do a job; rather, they are the "goods" which are serviced by the employees using tools (like soap in the commercial laundry).

*Id*.

8

## IV

The district court held that the plaintiffs could not establish "handling clause" (and therefore "enterprise") coverage for two reasons.  First, the vehicles they parked are not "materials," but rather "goods" subject to the FLSA's "ultimate consumer exception."  Second, that the plaintiffs "handled walkie-talkies, pens, uniforms, valet tickets, and other items that originated out of state does not change the intrastate nature of their work," because FCPS is "the ultimate consumer of those goods."  *See Rodriguez Asalde*, 2016 WL 5464599, at *2–3 & n.4.  Given our decision in *Gold Star*, 858 F.3d at 1371, the district court's ruling with respect to the vehicles was correct.  We therefore turn to the items used by the plaintiffs as valets for FCPS.

The plaintiffs argue that the walkie-talkies, pens, uniforms, valet tickets, and other items that they used in their jobs were "materials."  FCPS disagrees, defending the district court's ruling.  Based on the record before us, and our reading of the relevant statutory provisions and precedent, we hold there are triable issues of fact sufficient to defeat FCPS' motion for summary judgment on the issue of "enterprise" coverage.  For the present, it is enough for us to analyze and rest our decision on the valet tickets that FCPS' employees use in their work.

9

**A**

FCPS provides commercial valet parking services at a variety of locations in Miami-Dade County, including a convention center, a theatre, a hotel, and a private condominium.  At each of these locations, employees of FCPS use numbered valet tickets (purchased and provided by FCPS) to keep track of the cars they park for customers.  When a car pulls up, the valet who is in charge of parking obtains a valet ticket.  On one half of the ticket he or she writes his or her name and the make, model, and color of the car.  This information is then written down on a sheet by the valet who is in charge of the information/control booth and who keeps the keys of the cars.  The parking valet gives the other half of the ticket to the owner of the car, who uses it later to request the vehicle.  *See* D.E. 29-3, Deposition of Javier Cabrera at 42–43; D.E. 29-4, Deposition of Flor Andrea Rodriguez Asalde at 14, 18, 23-24; D.E. 36, Defendants' Amended Statement of Material Facts at ¶¶ 47, 51, 62; D.E. 44-2, Affidavit of Flor Andrea Rodriguez Asalde at ¶ 46; D.E. 44-3, Affidavit of John Conde at ¶ 2; D.E. 47-1, Supplemental Affidavit of Javier Antonio Cabrera Savinovich at ¶ 4; D.E. 49-3, Deposition of Jorge Zuluaga (FCPS' corporate representative) at 23.

A jury could find that the valet tickets used by FCPS in providing its commercial parking services constitute "materials" within the meaning of the FLSA's "handling clause."  First, looking at the matter contextually, a jury could

10

find that the valet tickets are "articles necessary for doing . . . something," i.e., providing the commercial service of parking cars. *See Polycarpe*, 616 F.3d at 1226. Second, a jury could find that the valet tickets have a "significant connection" with FCPS' commercial activity. *See id.* For a fee, valet parking services like FCPS take custody of cars belonging to others, park them, and then give them back to their owners at a later time. FCPS needs some way to keep track of the cars that are entrusted to its care so that it can locate them, retrieve them, and return them to their owners without undue delay at the appropriate time. A jury could find that the valet tickets, rather than being incidental, are a necessary means for FCPS to ensure inventory control in its provision of commercial parking services. Stated differently, a jury could find that the valet tickets are necessary to FCPS in the same way that laundry soap is necessary to a laundry. *See Polycarpe*, 616 F.3d at 1225 ("where a business provides a service using an item as part of its 'commercial operations,' Congress intended for those kinds of items to be viewed as 'materials'").

FCPS argues that the valet tickets are not "materials" under *Polycarpe.* But it does this in conclusory fashion, without explaining how it could run its business operation without them. *See* Br. for Appellees at 8. As a result, we are not persuaded by its argument. As for the district court's ruling that the valet tickets (and other items used by FCPS' employees) are merely goods used by FCPS and

11

are subject to the ultimate consumer exception, we have already explained why a jury must decide whether the valet tickets are "materials" in the context of FCPS' commercial parking operations.  *Cf.  Watkins v. City of Montgomery*, 775 F.3d 1280, 1288 (11th Cir. 2014) ("We acknowledge that the question of whether pay deductions for exempt employees are permissible under the FLSA can present a question of law that falls outside the province of the jury.  But that is not necessarily the case, and it was not the situation here."); *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1263–64 (11th Cir. 2008) (whether managers of chain of drive-through grocery stores fell within the FLSA's executive exemption was a matter for the jury).  As for the district court's conclusion that "the plaintiffs' work" is of an "intrastate nature," we have rejected that rationale as a basis for determining FLSA "enterprise" coverage; the inquiry here must focus on one or more specific "goods" or "materials."  *See Gold Star*, 858 F.3d at 1369 n.2 (holding that whether a business has a "local nature" is irrelevant, and that the "enterprise" coverage question turns on whether the items in question "were 'goods' not subject to the ultimate consumer exception or . . . were 'materials,' [that] . . . 'have been moved in or produced for commerce.'").  *See also Polycarpe*, 616 F.3d at 1221 ("An erroneous view of FLSA enterprise coverage—one that hangs on what is called the 'coming to rest' doctrine—is at odds with th[e] statutory text.  The 'coming to rest' doctrine is the belief that interstate goods or

12

materials can lose their interstate quality if the items have already come to rest within a state before intrastate purchase by a business."); *id*. at 1228 ("The inquiry for enterprise coverage under the FLSA is whether the 'goods' or 'materials' were in the past produced in or moved interstate, not whether they were most recently purchased intrastate.").

**B**

To show that "enterprise" coverage exists, the plaintiffs must also establish that the "materials" at issue—here the valet tickets—"have been moved in or produced for [interstate or international] commerce by any person." 29 U.S.C. § 203(s)(1)(A)(i). The district court appeared to accept that the evidence at summary judgment allowed a jury to find that the plaintiffs met this requirement with respect to a number of items, including the valet tickets. *See Rodriguez Asalde*, 2016 WL 5464599, at *3 n.4 (noting that the items in fact "originated out of state"). Our own plenary review of the record confirms that there is sufficient evidence for a jury to find that the valet tickets moved in or were produced for interstate commerce.

In its amended statement of material facts, FCPS asserted that it purchased the valet tickets "within Florida." D.E. 36, Defendants' Amended Statement of Material Facts at ¶ 71. FCPS' director of operations attested to the same thing in his affidavit. *See* D.E. 29-6, Affidavit of Sebastian Lopez at ¶ 10. This assertion

concerning purchase, however, does not establish that the tickets were manufactured in Florida.

In his deposition, Jorge Zuluaga, one of FCPS' owners, testified that it was his "understanding" that the valet tickets were manufactured in Florida. He explained that had "been at the shop" of one of FCPS' local vendors and had "seen the huge machines . . . and all the printing right there." D.E. 49-3, Deposition of Jorge Zuluaga at 24. He also said that the tickets had the name of the company on them, and that company "belongs to Florida." *Id.* at 25.[3]

If this was all the record contained, we might well agree with FCPS that the plaintiffs failed to create a jury issue as to whether the valet tickets moved in or were produced for interstate commerce. But, as they say, there is more. In a supplemental affidavit submitted before the district court issued its summary judgment order, one of the plaintiffs, Javier Antonio Cabrera Savinovich, said that in late July of 2016 he found in his personal documents a valet ticket he had issued to a customer while working as a valet for FCPS. He also explained that he and the other valets used tickets like that one in parking cars for FCPS. *See* D.E. 47-1, Supplemental Affidavit of Javier Antonio Cabrera Savinovich at ¶¶ 4–6. That representative ticket, a copy of which was attached to the affidavit, stated "PRINTED IN USA," as well as "SOUTHLAND PRINTING, SHREVEPORT, LA." *See* D.E. 47-2.

---

[3] FCPS did not present any copies of valet tickets in its summary judgment submissions.

FCPS moved to strike Mr. Cabrera Savinovich's supplemental affidavit and the valet ticket on a number of grounds, *see* D.E. 48, but the district court did not rule on that motion and, as noted, appeared to accept for purposes of summary judgment that the valet tickets and other items used by the plaintiffs originated outside of Florida. To the extent that FCPS mounts evidentiary objections to the supplemental affidavit and the valet ticket on appeal, *see* Br. for Appellees at 10–11, we reject them. First, Mr. Cabrera Savinovich was competent to authenticate the valet ticket, as he attested that he had provided it to one of FCPS' customers and found it in his personal documents. *See* Fed. R. Evid. 901(b)(1) (testimony "that an item is what it is claimed to be" is sufficient to authenticate the item); *United States v. Lanzon*, 639 F.3d 1293, 1301 (11th Cir. 2011) ("The proponent need only present enough evidence to make out a prima facie case that the proffered evidence is what it purports to be.") (internal quotation marks omitted). *See also* Fed. R. Evid. 902(7) (providing that "[a]n inscription, sign, tag, or label purporting to have been affixed in the course of business and indicating origin, ownership, or control" is self-authenticating). Second, although Mr. Cabrera Savinovich had submitted an earlier affidavit stating that he did not know where FCPS purchased the valet tickets, *see* D.E. 44-1, Affidavit of Javier Antonio Cabrera Savinovich at ¶ 26, the supplemental affidavit was not a sham. Mr. Cabrera Savinovich said that he located the valet ticket in his personal documents

15

six days after he submitted the initial affidavit, and that explanation is enough to allow consideration of the supplemental affidavit. Under the circumstances, any issues concerning Mr. Cabrera Savinovich's credibility is for the jury. *See, e.g., Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1306 (11th Cir. 2016) (explaining that the sham affidavit rule "only operates in a limited manner to exclude unexplained discrepancies and inconsistencies").

On the merits, FCPS contends that the name of a company and its location on a valet ticket "may simply reflect the name of the patent holder or reflect the name of the parent company of the local Florida printer." Br. for Appellees at 11. That assertion could be true, but it is not necessarily true, and it is not one that a jury must accept. We have to view the evidence in the light most favorable to the plaintiffs, and when seen in that light, the printing indicates that the valet ticket was manufactured by Southland Printing in Shreveport, Louisiana.

A label or inscription reflecting an item's place of manufacture is admissible evidence and generally suffices to support a jury finding as to origin, as all courts reaching the question seem to agree. *See, e.g., United States v. Brantley*, 68 F.3d 1283, 1288 (11th Cir. 1995) ("the weapon, which was seized in southern Florida, bore an imprint indicating that it had been manufactured in Atlanta, a clear indication of interstate commerce"). *Accord United States v. Burdulis*, 753 F.3d 255, 262–64 & n.8 (1st Cir. 2014) (affirming interstate nexus aspect of conviction

16

solely on the basis of an inscription, and collecting similar cases from other circuits); *United States v. Alvarez*, 972 F.2d 1000, 1004 (9th Cir. 1992) (inscription of "Garnika, Spain" on firearm could be used to show its manufacture in Spain), *overruled on other grounds by Kawashima v. Mukasey*, 530 F.3d 1111, 1116 (9th Cir. 2008). Indeed, FCPS does not cite any contrary authority. The printing on the representative valet ticket, we therefore conclude, is sufficient to create a jury question on movement in interstate commerce.

## V

The district court correctly ruled that the vehicles parked by the plaintiffs while working as valets for FCPS are not "materials" under the FLSA. Nevertheless, FCPS was not entitled to summary judgment on the issue of "enterprise" coverage. Viewing the evidence in the light most favorable to the plaintiffs, a jury could find that the valet tickets used by FCPS' employees constitute "materials" under § 203(s)(1)(A)(i) of the FLSA. A jury could also find, based on the printing on the representative valet ticket provided by Mr. Cabrera Savinovich, that the tickets were manufactured outside of Florida and moved in interstate commerce under § 203(s)(1)(A)(i).[4]

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

---

[4] Given our rulings, we need not reach the other issues presented, such as whether there is sufficient evidence that *other* items used by the plaintiffs in their work as valets for FCPS were "materials" or moved in international or interstate commerce.

17

# UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT
## Bill of Costs

Court of Appeals Docket No. __16-16814-FF__

Asalde et al. _____ vs. First Class Parking Systems LLC, et al. _____

A Bill of Costs should only be filed when the Clerk's Office has advised a party that the party is entitled to costs. FRAP 39 and 11th Cir. R. 39-1 govern costs taxable in this court and the time for filing the Bill of Costs. A motion for leave to file out of time is required for a Bill of Costs not timely received.

### INSTRUCTIONS

The appellate docketing fee is set in the fee schedule issued pursuant to 28 U.S.C. § 1913. However, the $5 fee for filing a notice of appeal is recoverable as a cost in the district court. In the grid below, multiply the number of original pages of each document by the total number of documents reproduced to calculate the total number of copies reproduced. Multiply this number by the cost per copy ( $.15 per copy for "In-House", up to $.25 per copy for commercial reproduction, supported by receipts) showing the product as costs requested.

| | Repro. Method (Mark One) | | No. of Original Pages | Total No. Documents Reproduced | Total No. of Copies | COSTS REQUESTED | CT. USE ONLY COSTS ALLOWED |
|---|---|---|---|---|---|---|---|
| | In-House | Comm* | | | | | |
| Appellate Docketing Fee | — | — | — | — | — | 505 | 500.00 |
| Appellant's Brief | | X | 39 | | 9 | 416.66 | 87.75 |
| Appendix | | X | 350 | | 3 | 359.58 | 262.50 |
| Appellee's Brief | | | | | | | |
| Reply Brief | | X | 31 | | 9 | 87.53 | 69.75 |
| | | | | | | | |
| | | | | | | | |
| *Note: If reproduction was done commercially, receipt(s) must be attached. See attached Bank Records from the undersigned Firm | | | | | TOTAL | $1,368.77 REQUESTED | $ 920.00 ALLOWED |

I hereby swear or affirm that the costs claimed were actually and necessarily incurred in this appeal and that I have served this Bill of Costs on counsel/parties of record.

Signature: _____[signature]_____　　　　　Date Signed: 7/12/18

Attorney Name: K. David Kelly　　　　　Attorney for: Flor Asalde et al.
(Type or print your name)　　　　　　　　(Type or print name of client)

E-mail: zabogado@aol.com　　　　　Phone: 305.865.6766

Street Address/City/State/Zip: J.H. Zidell, PA, 300 71st St., #605, Miami Beach, FL 33141

---

### FOR COURT USE ONLY

Costs are hereby taxed in the amount of $ __$920.00__ against __Appellees__

and are payable directly to __Appellants__

David J. Smith, Clerk of Court

By: _____[signature] Tina Potier_____　　DATE: 10/11/2018
　　　Deputy Clerk

Issued on: October 15, 2018

BOC Rev.: 6/17